# United States Court of Appeals for the Federal Circuit

06-7001

WOODROW F. SANDERS,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Michael A. Morin, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for claimant-appellant. On the brief was Mark R. Lippman, The Veterans Law Group, of La Jolla, California, for claimant-appellant.

Martin F. Hockey, Jr., Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief was Peter D. Keisler, Assistant Attorney General. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Martie S. Adelman, Staff Attorney, United States Department of Veterans Affairs, of Washington, DC. Of counsel was Todd M. Hughes, Assistant Director.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Alan G. Lance, Sr.

# United States Court of Appeals for the Federal Circuit

06-7001

WOODROW F. SANDERS,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  May 16, 2007

_____

Before NEWMAN, MAYER, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

Woodrow F. Sanders appeals an August 25, 2005, decision by the United States Court of Appeals for Veterans Claims ("Veterans Court") that affirmed a decision by the Board of Veterans' Appeals ("Board") denying Mr. Sanders's claim for service connection for choroidoretinitis of his right eye.  <u>Sanders v. Nicholson</u>, 20 Vet. App. 143 (2005).  Because the Veterans Court incorrectly required Mr. Sanders to establish that an error in a notice the Department of Veterans Affairs ("VA") is required to give claimants was prejudicial, we reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Mr. Sanders served in the United States Army from May 1942 to September 1945. Although his service medical records do not indicate that he suffered an eye trauma or abnormality and no eye abnormalities were recorded in his separation medical examination, Mr. Sanders asserts that on September 12, 1944, while serving in France, a bazooka exploded near him, burning the right side of his face. In December 1948, Mr. Sanders was diagnosed with chronic, right-eye choroidoretinitis, an inflammation of the choroids and retina. Believing his choroidoretinitis was caused by his injury in 1944, Mr. Sanders submitted a claim for service connection for a right-eye disability to the VA. The VA regional office ("VARO") denied his claim in February 1949.

Approximately forty years later, Mr. Sanders filed a statement attempting to reopen his claim for service connection for his choroidoretinitis. In support of his claim, Mr. Sanders submitted a statement from a VA ophthalmologist, dated December 1992, and a statement from a private ophthalmologist, dated September 1993. The VA ophthalmologist reported that Mr. Sanders stated that he was injured in a bridge explosion, rather than a bazooka explosion, and that he had experienced vision loss in his right eye ever since. The VA ophthalmologist went on to diagnose right and left macular chorioretinal scars and stated that "[i]t is not inconceivable that these macular and retinal lesions in each [eye] and particularly the right could have occurred secondary to trauma."

Mr. Sanders's private ophthalmologist also reported that Mr. Sanders indicated that his injury occurred during a bridge explosion and that he had experienced vision loss in his right eye since then. The ophthalmologist diagnosed large chorioretinal scars

06-7001                           2

in both eyes and opined that "[t]his type of macular injury in his right eye can certainly be concussive in character and his history supports the visual acuity loss from his injury in World War II."

Mr. Sanders later stated that both the VA ophthalmologist and his private ophthalmologist were incorrect in reporting that his eye injury occurred during a bridge explosion. Instead, Mr. Sanders reiterated that his injury occurred when the right side of his face was burned by a bazooka explosion. According to Mr. Sanders, this injury went unreported because there were no medics to whom he could report his injury and because most of his fellow soldiers were wounded or killed. Nonetheless, in July 1994 the VARO found Mr. Sanders had failed to present new and material evidence to reopen his claim. Mr. Sanders appealed to the Board, but the Board denied his claim for service connection in a decision dated November 27, 1998. In January 1999, however, the Veterans Court remanded Mr. Sanders's case for further development and adjudication.

In June 2000, the Board found that new and material evidence had been presented to reopen Mr. Sanders's claim for service connection and remanded Mr. Sanders's claim for a VA ophthalmologic examination to determine the etiology of his right-eye condition.

In December 2000, Mr. Sanders had a comprehensive eye examination by a VA optometrist. The optometrist diagnosed decreased vision in the right eye due to a macular scar and a small chorioretinal scar in the left eye, but stated that, based on the fact that Mr. Sanders's visual acuity in the right eye was 20/20 on May 15, 1942, and 20/25 on September 25, 1945, when he was discharged from the Army, it is unlikely that

the decrease in vision was related to Mr. Sanders's September 1944 trauma. The optometrist also noted that there was no documented evidence of reduced vision until 1948. According to the optometrist, "[i]t is certainly possible for there to have been damage to the retina in 1944 that then hemorrhaged in 1948, . . . but there are no other signs of ocular trauma." The optometrist concluded that "[t]he chorioretinitis is most likely infectious in nature, although the etiology at this point is impossible to determine." Although he noted it was possible Mr. Sanders contracted some infection during his military service, the optometrist stated that "there is no way to prove this either."

In August 2001, Mr. Sanders was also examined by another VA ophthalmologist, who diagnosed dense macular scarring of the right eye and early macular degeneration of the left eye. The ophthalmologist stated that Mr. Sanders's decreased vision was consistent with these clinical findings, but that the etiology of Mr. Sanders's macular scar "is more difficult to ascertain." According to the ophthalmologist, "[i]f [Mr. Sanders's] vision had been normal in the right eye prior to the reported injury, then it is possible that the macular scar could be related to the injury." The ophthalmologist further stated that "[d]ue to the fact that [Mr. Sanders] does have the additional punched out chorioretinal scars in both eyes, the possibility of [an infection] as the etiology of the macular scar could also be entertained."

The VARO issued Supplemental Statements of the Case in 2001 and 2002 discussing this additional medical evidence. The VARO also sent Mr. Sanders a letter stating that it had all the information it needed to decide his claim, but that he could submit any additional evidence he wanted considered.

In October 2003, the Board denied Mr. Sanders's claim for service connection for his right-eye choroidoretinitis. The Board found that the opinion of the VA optometrist was more probative on the issue of whether Mr. Sanders's choroidoretinitis was service-related and concluded that the preponderance of the evidence weighed against the claim. Mr. Sanders appealed to the Veterans Court.

On appeal to the Veterans Court, Mr. Sanders argued that the VA failed to provide notice as to who was responsible for obtaining the evidence necessary to substantiate his claim, as required by the notice provision of the Veterans Claims Assistance Act of 2000 ("VCAA"), 38 U.S.C. § 5103(a), and failed to provide this notice prior to the initial denial of his claim.

In a decision dated August 25, 2005, the Veterans Court found that there was a plausible basis in the record for the Board's decision denying service connection. The Veterans Court also found that Mr. Sanders did not allege any specific prejudice resulting from the VA's alleged failure to notify him about who would ultimately be responsible for obtaining the evidence necessary to substantiate his claim, and to provide notice before the initial unfavorable decision by the VARO. Because Mr. Sanders did not meet the burden of showing how such errors affected the fairness of the adjudication, the Veterans Court stated that it need not consider whether any error occurred. Mr. Sanders appeals to this court. We have jurisdiction over appeals from the Veterans Court pursuant to 38 U.S.C. § 7292.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Veterans Court decision, this court must decide "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). We must set aside any regulation or interpretation thereof, "other than a determination as to a factual matter," relied upon by the Veterans Court that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." Id. We review questions of statutory interpretation de novo. Summer v. Gober, 225 F.3d 1293, 1295 (Fed. Cir. 2000). Except to the extent that an appeal presents a constitutional issue, this court "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

### B. History of the VCAA

At the center of Mr. Sanders's appeal are the notice requirements of the VCAA. The VCAA was enacted in November 2000 to ensure that the VA assisted veterans claiming VA benefits. The legislation was passed in response to concerns expressed by veterans, veterans service organizations, and Congress over a July 1999 decision of the Veterans Court, Morton v. West, 12 Vet. App. 477 (1999), which held that the VA did not have a duty to assist veterans in developing their claims unless the claims were "well-grounded." Put another way, prior to the VCAA, the VA only had to assist in the full development of a veteran's claim if the veteran first provided enough information for

the VA to determine that the claim was plausible. The VCAA eliminated this well-grounded-claim requirement. See 146 Cong. Rec. H9913-14 (Oct. 17, 2000) (Explanatory Statement by the House and Senate Committees on Veterans' Affairs). Instead, Congress noted that under the VA's "claimant friendly" and "non-adversarial" adjudicative system, the VA "must provide a substantial amount of assistance to a [claimant] seeking benefits." 146 Cong. Rec. at H9913 (citations omitted).

Under the legal framework of the VCAA, there is generally no prerequisite to receiving VA assistance; the VA is simply required to assist a claimant at the time that claimant files a claim for benefits. See 38 U.S.C. § 5103A(a); 38 C.F.R. § 3.159(c) (2003). As part of this assistance, the VA is required to notify claimants of what they must do to substantiate their claims. 38 U.S.C. § 5103(a). If the VA denies a claim, it must provide the claimant with a statement of the reasons for the decision and a summary of the evidence considered. 38 U.S.C. § 5104(b). If a claimant files a notice of disagreement, the VA must issue a statement of the case summarizing the reasons for the VA's decision on each issue, the evidence considered, and the relevant statutes and regulations. 38 U.S.C. § 7105(d)(1). All claimants are entitled to appear at their hearings for the purpose of presenting evidence, and VA personnel conducting hearings are instructed to "suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c)(2).

As mentioned above, Mr. Sanders's appeal focuses on the notice requirements of the VCAA. These notice requirements are contained within 38 U.S.C. § 5103(a), which states:

Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a).

The purpose of § 5103(a) notification "is to ensure that the claimant's case is presented to the initial decisionmaker with whatever support is available, and to ensure that the claimant understands what evidence will be obtained by the VA and what evidence must be provided by the claimant" prior to the initial adjudication of his claim. Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2006) ("Mayfield II"). Moreover, the VA's duty to notify cannot be satisfied "by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation," as such post-decisional notices do not contain the same content or serve the same purpose as § 5103(a) notification. Id.; see also Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004).

The statutory notice requirement of § 5103(a) is implemented in 38 C.F.R. § 3.159(b)(1), which provides, in pertinent part:

When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim.

Accordingly, the notice required by the VCAA can be divided into four separate elements: (1) notice of what information or evidence is necessary to substantiate the claim; (2) notice of what subset of the necessary information or evidence, if any, that the claimant is to provide; (3) notice of what subset of the necessary information or evidence, if any, that the VA will attempt to obtain; and (4) a general notification that the claimant may submit any other evidence he or she has in his or her possession that may be relevant to the claim. Errors with regard to these elements are referred to as first-element, second-element, third-element, and fourth-element notice errors, respectively.

This court has previously held that such VCAA notice errors are reviewed under a prejudicial error rule. Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004). This is consistent with 38 U.S.C. § 7261(b)(2), which states that the Veterans Court shall "take due account of the rule of prejudicial error" when reviewing the record of proceedings before the Secretary and the Board of Veterans' Appeals. The court in Conway, however, did not express an opinion as to what it means for the Veterans Court to "take due account" of the rule, nor did it define what constitutes prejudical error. Conway, 353 F.3d at 1375.

Lacking specific guidance from this court, the Veterans Court took it upon itself to address how to apply the rule of prejudicial error in Mayfield v. Nicholson, 19 Vet. App. 103 (2005) ("Mayfield I"), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006). As an initial matter, the Veterans Court in Mayfield I held that an appellant asserting a VCAA notice error bears the burden of convincing the court that a notice error has, indeed, been committed, by referring to specific deficiencies in the documents in the record on

appeal, including any documents that may have been relied on as satisfying the notice requirements of § 5103(a). Id. at 111.

Next, the court addressed what was meant by prejudicial error. Id. at 112-16. After analyzing Supreme Court and Federal Circuit precedent, as well as interpretations of the prejudicial error rule under the Administrative Procedure Act ("APA"),[1] the court concluded that "an error is prejudicial if it affects the 'substantial rights' of the parties in terms of 'the essential fairness of the [adjudication].'" Id. at 115 (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553-54 (1984)). As stated by the court, this did not require an outcome to have been different to have been prejudicial. Id.; see also Kotteakos v. United States, 328 U.S. 750, 765 (1946) ("The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error had substantial influence."). That said, a demonstration that the outcome would not have been different in the absence of the error would demonstrate that there was no prejudice. Mayfield I, 19 Vet. App. at 115.

According to Mayfield I, Congress, in § 7261(b)(2), provided the Veterans Court "with considerable discretion in determining what burdens should be carried by the parties regarding [its] taking due account of the prejudicial-error rule." Id. at 117. After analyzing Supreme Court precedent in other contexts, see id. at 117-20, the court concluded that

> in the section 5103(a) notice context an appellant generally must identify, with considerable specificity, how the notice was defective and what

---

[1] Similar to the VCAA, the APA requires federal courts to take "due account . . . of the rule of prejudicial error" when reviewing agency administrative action. 5 U.S.C. § 706.

evidence the appellant would have provided or requested the Secretary to obtain (e.g., a nexus medical opinion) had the Secretary fulfilled his notice obligations; further, an appellant must also assert, again with considerable specificity, how the lack of that notice and evidence affected the essential fairness of the adjudication.

Id. at 121. However, if the asserted error is found to exist and to be of the type that has the "natural effect" of producing prejudice, an appellant need not have pled prejudice. Id. Instead, "it is the Secretary's burden to demonstrate lack of prejudice in terms of the fairness of the adjudication." Id. To do this, the Secretary is required to persuade the court that the purpose of the notice was not frustrated—e.g., by demonstrating: (1) that any defect in notice was cured by actual knowledge on the part of the claimant, (2) that a reasonable person could be expected to understand from the notice provided what was needed, or (3) that a benefit could not possibly have been awarded as a matter of law. Id. With this in mind, the Veterans Court defined the roles of the claimant and the Secretary in connection with the court's taking due care of the prejudicial error rule in the context of the various types of notice element and timing errors.

With respect to the first notice element, i.e., notice regarding the information and evidence necessary to substantiate the claim, the court held that the natural effect of such an error would "constitute a failure to provide a key element of what it takes to substantiate [the] claim, thereby precluding [the appellant] from participating effectively in the processing of her claim," defeating the very purpose of § 5103(a) notice. Id. at 122. Accordingly, the court held that such a first-element error was presumed prejudicial, and that the VA had the burden of demonstrating that the appellant was not prejudiced by the notice error. Id.

With respect to the second and third notice elements, i.e., notice regarding which portion of the information and evidence necessary to substantiate the claim, if any, is to be provided by the claimant and which portion, if any, the Secretary will attempt to obtain on behalf of the claimant, the court noted that "the assertion of [such an] error, by itself, does not have the natural effect of producing prejudice because this asserted error did not preclude the appellant from effectively participating in the processing of [the] claim." Id. Instead, "prejudice can arise from such an asserted error only if [the appellant] failed to submit evidence because [he or] she was not advised to do so, or if the Secretary failed to seek to obtain evidence that he should have obtained." Id. Accordingly, with respect to second and third notice elements, the Veterans Court placed the burden of establishing prejudice on the claimant, requiring the claimant to identify: (1) how the notice was defective; (2) what evidence the appellant would have provided or requested the Secretary to obtain had the Secretary fulfilled his notice obligations; and (3) how the lack of that evidence affected the essential fairness of the adjudication. Id. at 121.

With respect to the fourth notice element, i.e., that the notice "request that the claimant provide any evidence in the claimant's possession that pertains to the claim," 38 C.F.R. § 3.159(b)(1), the court also placed the burden of showing prejudice on the claimant. Id. at 122-23. According to the court, "[p]rejudice would exist only if the claimant had evidence in [his or] her possession, not previously submitted, that is, of the type that should be considered by the Secretary in assessing her claim." Id. at 122. Moreover, whether or not claimant had such evidence "is a matter within [his or] her knowledge and certainly outside the Secretary's." Id. at 123. Accordingly, the court

thought the burden to prove prejudice was properly placed on the claimant, rather than on the Secretary. This required the claimant to identify: (1) how the notice was defective, (2) what evidence the appellant would have provided had the Secretary fulfilled his notice obligations, and (3) how the lack of that evidence affected the essential fairness of the adjudication. Id. at 121.

Finally, with regard to timing errors, the court noted that such errors "do[] not have the natural effect of producing prejudice and that, therefore, prejudice must be pled as to it." Id. at 123.

### C. Prejudicial Error Rule in the VCAA Context

On appeal, Mr. Sanders contends that the Veterans Court's opinion in Mayfield I, requiring a claimant to show prejudice as the result of an untimely or inadequate VCAA notice with respect to second-, third-, and fourth-element notice errors, misinterprets 38 U.S.C. § 5103(a) and 38 U.S.C. § 7261(b)(2). Instead, Mr. Sanders argues that all VCAA notice violations should be presumed prejudicial, as is the case with first-element notice errors under Mayfield I.[2] We agree.

The requirement that a claimant demonstrate prejudice as a result of a VCAA notice error is at odds with the very purpose behind the passage of the VCAA. Instead, we hold that the VCAA notice errors should be presumed prejudicial, requiring reversal

---

[2] Although Mr. Sanders's brief argues that VCAA notice errors should be deemed per se prejudicial, the brief also acknowledges an exception to this rule "when, under any conceivable factual scenario, further development of the record would not support an award of benefits." (Appellant's Br. 18 n.9.) As such, Mr. Sanders does not advocate a true "per se prejudicial" rule. Instead, at oral argument counsel for Mr. Sanders clarified his position as advocating a presumption of prejudice for all VCAA notice errors, similar to the presumption applied to first-element notice errors under Mayfield I.

unless the VA can show that the error did not affect the essential fairness of the adjudication. To do this, the VA must persuade the reviewing court that the purpose of the notice was not frustrated, e.g., by demonstrating: (1) that any defect was cured by actual knowledge on the part of the claimant, (2) that a reasonable person could be expected to understand from the notice what was needed, or (3) that a benefit could not have been awarded as a matter of law. In other words, we conclude that the rule the Veterans Court applied to first-element notice errors should also apply to second-, third- and forth-element notice errors.

Although the Supreme Court in Palmer v. Hoffman, 318 U.S. 109, 116 (1943) held that "[h]e who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted," the Supreme Court has also held that "the burden of showing that any technical errors . . . affected his substantial rights" does not always fall to the party seeking a new trial. Kotteakos, 328 U.S. at 760. Instead, "[i]f the error is of such a character that its natural effect is to prejudice a litigant's substantial rights, [then] the burden of sustaining a verdict will . . . rest upon the one who claims under it." Id. The fact that Kotteakos involved a criminal matter is immaterial, as "precedent suggests that civil and criminal harmless-error standards do not differ in their treatment of grave doubt as to the harmlessness of errors affecting substantial rights." O'Neal v. McAninch, 513 U.S. 432, 441 (1995).

In Mayfield I, the Veterans Court acknowledged that "[s]ection 5103(a) assumes a fundamental role in furthering an interest that goes to the very essence of the nonadversarial, pro-claimant nature of the VA adjudication system . . . by affording a claimant a meaningful opportunity to participate effectively in the processing of his or

her claim." 19 Vet. App. at 120-21 (citations omitted); see also id. at 120 ("Nothing in the VCAA's legislative history, or in the VA's August 2001 regulations or their regulatory history, suggests that the VCAA and its implementing regulations were not intended to bestow upon an appellant a substantial right by way of amended section 5103(a) notice."). The Veterans Court, however, erred by not giving sufficient weight to the importance of claimant participation to the VA's uniquely pro-claimant benefits system.

Moreover, despite its proffered justifications, the Veterans Court erred by parsing the various elements of the notice required by § 5103(a) and finding certain elements of the required notice more substantial than others. As stated by the Supreme Court, "there is no canon against using common sense in construing laws as saying what they obviously mean." Roschen v. Ward, 279 U.S. 337, 339 (1929). The Veterans Court, however, took Congress's clear desire to create a framework conducive to efficient claim adjudication and instead created a system that practically requires a claimant asserting a notice error to seek counsel simply to be able to navigate the appeal process and assure him or herself of a fair adjudication. For example, the system articulated by the Veterans Court requires a claimant, simply in order to rectify the VA's failure to comply with its statutorily mandated responsibilities, to bear the burden of (1) figuring out what it means to "affect the essential fairness of the adjudication," and (2) persuading the court in an adversarial judicial proceeding that the essential fairness of the underlying adjudication was indeed affected. Given Congress's intent to not only involve but assist the claimant in the processing of his or her claim, and given that the rule of prejudicial error only arises when the VA has undisputedly failed to follow

statutory requirements, the system created by <u>Mayfield I</u> cannot be consistent with what Congress envisioned when passing the VCAA.

Additionally, the Veterans Court compounded this error by discounting the importance of several of the various notice elements when considering whether the various VCAA notice errors had the natural effect of prejudicing the appellant. With respect to first-element notice errors, we agree with the Veterans Court that the natural effect of such an error would "constitute a failure to provide a key element of what it takes to substantiate [the] claim, thereby precluding [the appellant] from participating effectively in the processing of her claim," defeating the very purpose of § 5103(a) notice. <u>Mayfield I</u>, 19 Vet. App. at 122. However, we fail to see how second-, third-, and fourth-element notice errors are so materially different from first-element notice errors as to compel substantially different treatment.

With respect to second- and third-element notice errors, the Veterans Court incorrectly concluded that such an error "did not preclude the appellant from effectively participating in the processing of [the] claim." <u>Id.</u> Instead, the Veterans Court stated that "prejudice can arise . . . only if [the appellant] failed to submit evidence because [he or] she was not advised to do so, or if the Secretary failed to seek to obtain evidence that he should have obtained." <u>Id.</u> This fact, however, does not dictate placing the burden of establishing prejudice on the claimant. In passing the VCAA, Congress clearly viewed the claimant's participation as essential to processing his or her claim for VA benefits, and believed that the claimant should be notified which evidence he or she was responsible for providing and which evidence the government was responsible for providing. If Congress felt that such notice elements were not necessary to allow the

claimant to effectively participate in the processing of his or her claim, then why would it have required them as part of the notice pursuant to § 5103(a)? By presuming these notice errors were not prejudicial, the Veterans Court essentially excused the VA's failure to satisfy its statutory obligations—ones which Congress explicitly required in order to allow the claimant to effectively participate in the processing of his or her claim—without a showing that the defect had not frustrated the very purpose of the notice. This was error.

The Veterans Court also incorrectly placed the burden of establishing prejudice on the appellant with respect to fourth-element notice errors. Although the Veterans Court correctly stated that "[p]rejudice would exist only if the claimant had evidence in [his or] her possession, not previously submitted, that is, of the type that should be considered by the Secretary in assessing her claim," id., this fact does not dictate placing the burden of establishing prejudice on the appellant. And although the Veterans Court did not base its allocation of the burden on that fact that whether or not the claimant had such evidence "is a matter within [his or] her knowledge and certainly outside the Secretary's," id. at 123, this fact only highlights the importance of providing proper notice to the claimant.

Finally, with regard to timing errors, the Veterans Court also incorrectly placed the burden of establishing prejudice on the appellant. As this court pointed out, the purpose of § 5103(a) notification is to ensure that the claimant's case is presented with all available support prior to the initial adjudication of his claim. Mayfield II, 444 F.3d at 1333-34. Post-decisional notices cannot satisfy the VA's § 5103(a) notification duty. Id. By assuming timing errors are not prejudicial, however, the Veterans Court essentially

held the opposite—that post-decisional notices can be assumed to have satisfied this duty. It is not for the Veterans Court, nor for this court for that matter, to disregard Congress's intended purpose. Accordingly, presuming such timing errors were not prejudicial was error on the part of the Veterans Court.

In light of the above discussion, we hold that any error in a VCAA notice should be presumed prejudicial. The VA has the burden of rebutting this presumption. That said, this opinion does not displace the rule that the claimant bears the burden of demonstrating error in the VCAA notice, see U.S. Vet. App. R. 28(a), nor does it change the rule that reversal requires the essential fairness of the adjudication to have been affected. This opinion merely clarifies that all VCAA notice errors are presumed prejudicial and that the VA has the burden of rebutting this presumption.

In announcing this rule, we are mindful of the Supreme Court's admonition that only certain "structural errors undermining the fairness of a criminal proceeding as a whole" warrant reversal without regard to the mistake's effect upon the proceeding, United States v. Benitez, 542 U.S. 74, 81 (2004). A presumption of prejudice does not require reversal in all instances of VCAA notice error. Only in situations where the VA cannot rebut the presumption would reversal be warranted.

Moreover, the presumption of prejudice does not defeat the purpose of the rule of prejudicial error, i.e., "to avoid wasteful proceedings on remand where there is no reason to believe a different result would have been obtained had the error not occurred." In re Watts, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Instead, it merely shifts the burden of rebutting this presumption to the VA in light of the uniquely pro-claimant benefit system created by the VCAA.

We are also mindful that when § 7261(b)(2) was originally enacted—as 38 U.S.C. § 4061(b)—the Senate Committee on Veterans Affairs issued a report that stated its scope-of-review provisions "would incorporate a reference to the 'rule of prejudicial error' as included in the [APA]," and that this would require a court to "pass over errors in the record of the administrative proceedings that the court finds not to be significant to the outcome of the matter." S. Rep. No. 100-481, at 62 (1988). However, the treatment of prejudicial error under the APA is not dispositive, as even the Veterans Court recognized. In Mayfield I, after considering the APA, the Veterans Court still noted that § 7261(b)(2) left it with "considerable latitude as to how to 'take due account'" of the rule of prejudicial error. 19 Vet. App. at 114. Had the Veterans Court felt constrained by the interpretation of the rule of prejudicial error under the APA, such an acknowledgment would have been unnecessary. Moreover, the statement that § 4061(b) would "incorporate a reference to the 'rule of prejudicial error' as included in the [APA]" was made a dozen years prior to the passage of the VCAA. Even if Congress had previously intended veterans' claims notice errors to be assessed under the same prejudicial error rule as APA notice errors, such intent was abrogated by the subsequent passage of the VCAA, which, as previously discussed, substantially overhauled the administration of the VA benefits system. Like the Veterans Court, we, too, believe that Congress left the courts with "considerable latitude" in implementing the rule of prejudicial error. However, as discussed above, the Veterans Court overlooked the uniquely pro-claimant nature of the VA benefits system. Put simply, interpreting § 7261(b)(2) as requiring veterans to overcome a series of complex legal hurdles in order to secure the assistance mandated by Congress would clearly frustrate

the purpose of the VCAA.  As such, the Veterans Court's interpretation of § 7261(b)(2) is in error.

## III.  CONCLUSION

Because the Veterans Court incorrectly required Mr. Sanders to demonstrate prejudice in the VCAA notice error context, we reverse and remand for proceedings consistent with this opinion.

## COSTS

No costs.

## <u>REVERSED AND REMANDED</u>