Citation Nr: 1138411 
Decision Date: 10/14/11 Archive Date: 10/19/11

DOCKET NO. 11-08 529 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUE

Entitlement to an increased rating for blindness of the right eye, currently evaluated as 30 percent disabling. 


REPRESENTATION

Appellant represented by: Military Order of the Purple Heart of the U.S.A.


ATTORNEY FOR THE BOARD

D. M. Casula, Counsel 


INTRODUCTION

The Veteran had active service from March 1954 through October 1958. 

This matter comes before the Board of Veterans' Appeals (Board) from a February 2010 rating decision of the above Regional Office (RO) of the Department of Veterans Affairs (VA) which denied a rating in excess of 10 percent for right eye blindness and denied service connection for glaucoma and age related macular degeneration of the left eye. Although the Veteran filed a notice of disagreement with both issues and a February 2011 statement of the case encompassed both issues, the Veteran failed to perfect an appeal of the claim for service connection for glaucoma and age related macular degeneration of the left eye; thus, that service connection issue is not before the Board on appeal.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran's service-connected right eye disability is manifested by blindness in the right eye, with no light perception, and without enucleation of the eye.

2. The Veteran is not blind in the non-service-connected left eye.


CONCLUSION OF LAW

The criteria for a rating in excess of 30 percent for the service-connected right eye blindness have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 3.383, 4.75, Diagnostic Codes 6027, 6070 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000).

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating a claim for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.159, 3.326(a).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1), as amended, 73 Fed. Reg. 23,353 (April 30, 2008). This notice must be provided prior to an initial decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of disability; (3) connection between service and the disability; (4) degree of disability; and (5) effective date of benefits where a claim is granted. Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006).

If complete notice is not provided until after the initial adjudication, such a timing error can be cured by subsequent legally adequate VCAA notice, followed by readjudication of the claim, as in a Statement of the Case (SOC) or Supplemental SOC (SSOC). Moreover, where there is an uncured timing defect in the notice, subsequent action by the RO which provides the claimant a meaningful opportunity to participate in the processing of the claim can prevent any such defect from being prejudicial. Mayfield v. Nicholson, 499 F.3d 1317, 1323-24 (Fed. Cir. 2007); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) previously held that any error in VCAA notice should be presumed prejudicial, and that VA bears the burden of proving that such error did not cause harm. Sanders v. Nicholson, 487 F.3d 881 ( Fed. Cir. 2007). The U.S. Supreme Court reversed that decision, finding it unlawful in light of 38 U.S.C.A. § 7261(b)(2). The Supreme Court held that - except for cases in which VA failed to meet the first requirement of 38 C.F.R. § 3.159(b) by not informing the claimant of the information and evidence necessary to substantiate the claim - the burden of proving harmful error rests with the party raising the issue, as the Federal Circuit's presumption of prejudicial error imposed an unreasonable evidentiary burden on VA and encouraged abuse of the judicial process, and determinations of harmless error should be made on a case-by-case basis. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). 

In a claim for increase, the VCAA requirement is for generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed.Cir. 2009).

In this case, the VCAA duty to notify was satisfied by way of a letter sent to the Veteran in September 2009 that fully addressed the notice elements and was sent prior to the initial RO decision in this matter. The letter informed him of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. The Board also notes that in the September 2009 letter, the Veteran was advised of how disability ratings and effective dates are assigned. See Dingess v. Nicholson, supra. Moreover, he has not demonstrated any error in VCAA notice, and therefore the presumption of prejudicial error as to such notice does not arise in this case. See Sanders v. Nicholson, supra. Thus, the Board concludes that all required notice has been given to the Veteran.

The Board also finds VA has satisfied its duty to assist the Veteran in the development of the claim. The RO has obtained all identified and available post-service treatment records for him. Further, the Board notes that the January 2010 VA examinations included a review of the claims folder and a history obtained from the Veteran, and examination findings were reported, along with diagnoses/opinions, which were supported in the record. The examination report is therefore adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 310-11 (2007). It appears that all obtainable evidence identified by the Veteran relative to his claim has been obtained and associated with the claims file, and that neither he nor his representative has identified any other pertinent evidence, not already of record, which would need to be obtained for a fair disposition of this appeal. The Board concludes that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, supra.

The Board concludes that VA has satisfied its duty to assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claim under the VCAA. No useful purpose would be served in remanding this matter for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The United States Court of Appeals for Veterans Claims (Court) has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

II. Factual Background

VA treatment records dated in 2009 consistently show that the severity of the Veteran's right eye visual acuity was no light perception.

On VA examination in January 2010, the Veteran reported that in 1954, a firework blew up in front of his right eye and resulted in a cataract and retinal detachment. He reported blurred vision in the left eye, for one year, that was due to exudative age-related macular degeneration of the left eye. On examination, he was noted to have total visual impairment and blindness in the right eye, and in the left eye he was found to have 20/100 distant vision without correction and 20/40 with correction, and 20/70 near vision without correction and 20/40 with correction. The diagnoses included no light perception right eye; inactive exudative age-related macular degeneration of the left eye, with no affect on field of vision; advanced primary open angle glaucoma, left eye, with no affect on visual acuity or field of vision; mild dry left eye, managed well with artificial tears; and hypertrophic astigmatism with presbyopia left eye.

III. Analysis

Disability evaluations are determined by application of the VA Schedule for Rating Disabilities, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Each disability must be viewed in relation to its history and there must be emphasis upon the limitation of activity imposed by the disabling condition. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Service connection for a right eye disability, listed as blindness, right eye, was granted by the RO in a December 1982 rating decision. The 30 percent rating was established at that time under the criteria for evaluation of blindness of one eye, with normal vision in the other (Diagnostic Code 6070). In addition, the Veteran was granted special monthly compensation based on loss of use of one eye having only light perception.

Received from the Veteran in August 2009, was a claim for an increased rating for his service-connected right eye blindness. Although the Veteran also reported vision problems with his left eye, as noted above, he did not perfect an appeal as to that claim.

Disabilities of the eyes are rated under 38 C.F.R. § 4.84, Diagnostic Codes 6000 - 6092. As noted above, Diagnostic Code 6070, for blindness in 1 eye, with only light perception, affords a maximum 30 percent rating, with special monthly compensation. Further, a 40 percent evaluation will be assigned for anatomical loss of one eye, when corrected visual acuity in the other eye is 20/40. 38 C.F.R. § 4.84a, Diagnostic Code 6066. Where only one eye is service-connected, as here, the visual acuity in the nonservice-connected eye is considered normal (20/40 or better) unless there is blindness in that eye. See Villano v. Brown, 10 Vet.App. 248 (1997); see also 38 U.S.C.A. § 1160(a)(1); 38 C.F.R. § 3.383, 4.14, 4.78. 

The Veteran's left eye is not service connected, and the January 2010 VA examination and VA treatment records in the claims folder clearly show that he has no blindness or anatomical loss of the left eye. Most recently, on the 2010 VA examination, the Veteran was found to have 20/100 distant vision without correction and 20/40 with correction, and 20/70 near vision without correction and 20/40 with correction, in the left eye. Thus, his left eye is considered normal for ratings purposes. Villano v. Brown, supra. 

The Board has also considered the application of other diagnostic codes. Ratings above 30 percent require some measurable impairment of visual acuity in both eyes. See generally 38 C.F.R. § 4.84a, Diagnostic Codes 6061, 6062, 6063, 6064, 6065, 6067, 6068, 6069, 6073, 6076, and 6078. While there is significant impairment of vision in his right eye, the Veteran's left eye is normal for ratings purposes and there has been no anatomical loss of either the right or left eye. 

Furthermore, Diagnostic Code 6080 provides disability ratings for visual field loss. Because the Veteran left eye is essentially normal, the only available ratings are for unilateral visual field loss. See 38 C.F.R. § 4.84a, Diagnostic Code 6080. The only ratings for unilateral visual field loss are, however, 30 percent or less, and, as noted above, Diagnostic Code 6070, for blindness in 1 eye, with only light perception, already affords a 30 percent rating. Moreover, because there are no notations of restricted field loss, there is no indication that a separate rating for field loss is appropriate in that case. 

The Board also notes that the Veteran has not offered any medical evidence to contradict the findings of the VA examinations or treatment records, although he has been accorded ample opportunity to present competent medical evidence in support of his claim, but he has not done so. See 38 U.S.C.A. § 5107(a). Thus, there being no available schedular rating above 30 percent for a unilateral vision disability with normal vision in the non-service connected eye, the Board finds that the criteria for a rating in excess of 30 percent have not been met. The claim must be denied on a schedular basis. See 38 C.F.R. § 4.84a. 

The Board has also considered whether a referral for extraschedular rating is warranted. In exceptional cases where schedular disability ratings are found to be inadequate, consideration of an extra-schedular disability rating is made. 38 C.F.R. § 3.321(b)(1). There is a three-step analysis for determining whether an extra-schedular disability rating is appropriate. Thun v. Peake, 22 Vet. App. 111 (2008). 

First, there must be a comparison between the level of severity and symptomatology of the service-connected disability and the established criteria found in the rating schedule to determine whether the disability picture is adequately contemplated by the rating schedule. Id. If not, the second step is to determine whether the Veteran's exceptional disability picture exhibits other related factors identified in the regulations as "governing norms." Id.; see also 38 C.F.R. § 3.321(b)(1). If the factors of step two are found to exist, the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id.

The record reflects that the Veteran retired as a mechanic in 1995, and it was noted that he was eligible due to his age or duration of work and a medical problem. He reported he had a heart attack right before he decided to retire. Here, as explained above, the rating criteria for the Veteran's service-connected right eye disability, reasonably describes his disability level and symptomatology, and provides for a greater evaluation for more severe symptoms - to primarily include left eye impairment. For these reasons, the disability picture is contemplated by the Rating Schedule, and the assigned schedular ratings are adequate. There is also no indication the Veteran has been frequently hospitalized due to his service-connected right eye disability. Thus, the criteria for referral for the assignment of an extraschedular disability rating are not met. 38 C.F.R. § 3.321(b)(1); Thun, supra.


ORDER

Entitlement to a rating in excess of 30 percent for blindness of the right eye is denied.



____________________________________________
L.M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs