﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 201124-128279
DATE: March 31, 2021

ORDER

Entitlement to service connection for coronary artery disease with old myocardial infarction and first-degree heart block, status post coronary artery bypass graft, to include as a result of exposure to herbicide agents, is granted.

Entitlement to service connection for diabetes mellitus, type II, to include as a result of exposure to herbicide agents, is granted.

Entitlement to service connection for Parkinson’s disease, to include as a result of exposure to herbicide agents, is granted.

Entitlement to service connection for diabetic neuropathy of the left lower extremity as secondary to diabetes mellitus, type II, is granted.

Entitlement to service connection for diabetic neuropathy of the right lower extremity as secondary to diabetes mellitus, type II, is granted.

Entitlement to service connection for the Veteran’s cause of death is granted.

FINDINGS OF FACT

1. The probative evidence of record is in relative equipoise as to whether the Veteran was exposed to herbicide agents during his active service in Thailand, During the Vietnam War Era. 

2. The Veteran died in October 2019 and the immediate cause of death, as listed on his death certificate, was Parkinson’s disease. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for coronary artery disease with old myocardial infarction and first-degree heart block, status post coronary artery bypass graft, to include as a result of exposure to herbicide agents, have been met. 38 U.S.C. §§ 1101, 1110, 1116, 1131, 1137, 5103, 5107 (2012); 38 C.F.R. §§ 3.1, 3.102, 3.303, 3.304, 3.307, 3.309 (2019).

2. The criteria for entitlement to service connection for diabetes mellitus, type II, to include as a result of exposure to herbicide agents, have been met. 38 U.S.C. §§ 1101, 1110, 1116, 1131, 1137, 5103, 5107 (2012); 38 C.F.R. §§ 3.1, 3.102, 3.303, 3.304, 3.307, 3.309 (2019).

3. The criteria for entitlement to service connection for Parkinson’s disease, to include as a result of exposure to herbicide agents, have been met. 38 U.S.C. §§ 1101, 1110, 1116, 1131, 1137, 5103, 5107 (2012); 38 C.F.R. §§ 3.1, 3.102, 3.303, 3.304, 3.307, 3.309 (2019).

4. The criteria for entitlement to service connection for diabetic neuropathy of the left lower extremity as proximately due to diabetes mellitus, type II, have been met. 38 U.S.C. §§ 1110, 1131, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2019).

5. The criteria for entitlement to service connection for diabetic neuropathy of the right lower extremity as proximately due to diabetes mellitus, type II, have been met. 38 U.S.C. §§ 1110, 1131, 5107(b) (2012); 38 C.F.R. § § 3.102, 3.303, 3.310 (2019).

6. The criteria for entitlement to service connection for the Veteran’s cause of death have been met. 38 U.S.C. §§ 1101, 1110, 1131, 1310, 5103, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.312 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Air Force from November 1955 to May 1978. He died in October 2019. The Appellant is his surviving spouse.

The rating decision on appeal was issued in September 2020 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. In the November 2020 VA Form 10182, Decision Review Request: Board Appeal, the Appellant elected the Evidence Submission docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Appellant or her representative with, or within 90 days from receipt of, the VA Form 10182. 38 C.F.R. § 20.303.

The Board acknowledges that the AOJ adjudicated claims for accrued purposes only in the September 2020 rating decision and that a formal AOJ decision on the Appellant’s request for substitution is not of record. A key difference between a claim for accrued benefits and substitution is that a claim for substitution purposes allows for the submission of additional evidence, while a claim for accrued purposes only is to be decided on the evidence of record at the time of the Veteran's death.

Although the AOJ did not specifically adjudicate the issue of substitution, it appears the AOJ found her to be an appropriate substitute claimant by inviting her to submit additional evidence on the Veteran’s claims. And, although 38 C.F.R. § 3.1010(e) provides that a decision on substitution will be adjudicated by the AOJ in the first instance, the Board also acknowledges that, because it allows for the fullest consideration of the Appellant’s arguments and evidence in support of her claims, a formal finding that the Appellant is a proper substitute claimant for the Veteran at this stage in the appellate process is not prejudicial to her. See Sanders v. Nicholson, 487 F.3d 881 (Fed. Cir. 2007), rev’d sub nom., Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (discussing prejudicial error). The Board finally notes that, under the statute governing substitution of claimants, it has the necessary authority to review all of the record evidence (dated before and after the Veteran’s death) in order to adjudicate the Appellant’s currently appealed claims. Having reviewed the record evidence, and noting that the Appellant was the Veteran’s spouse, the Board finds that the Appellant is a proper substitute claimant for the Veteran and the claims on appeal should be characterized as stated above. See 38 U.S.C. § 5121A; 38 C.F.R. § 3.1010. 

This appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.900(c) (2019); 38 U.S.C.§ 7107(a)(2) (2012).

1. Entitlement to service connection for coronary artery disease with old myocardial infarction and first-degree heart block, status post coronary artery bypass graft, to include as a result of exposure to herbicide agents.

2. Entitlement to service connection for diabetes mellitus, type II, to include as a result of exposure to herbicide agents.

3. Entitlement to service connection for Parkinson’s disease, to include as a result of exposure to herbicide agents.

The Veteran seeks entitlement to service connection for his coronary artery disease (CAD), diabetes mellitus, type II (DMII), and Parkinson’s disease. The Veteran alleged that he was exposed to herbicide agents while serving in Thailand. Specifically, the Veteran stated that while serving on the Udorn Royal Thai Air Force Base (RTAFB), his duties placed him on the perimeter and on the flight line. 

The AOJ favorably found that the Veteran has current diagnoses of CAD, DMII, and Parkinson’s disease. The Board is bound by these favorable findings.

At issue is whether the Veteran’s CAD, DMII, and Parkinson’s disease was caused by or is otherwise related to active service, to include in-service herbicide agent exposure.

After a careful review of the record, the Board finds that service connection for CAD, DMII, and Parkinson’s disease, as due to herbicide agent exposure, is warranted. The probative evidence of record demonstrates that that it is at least as likely as not that the Veteran was exposed to herbicide agents during his active service while stationed at Udorn RTAFB in Thailand during the Vietnam War Era. Therefore, his CAD, DMII, and Parkinson’s disease is presumed to be related to in-service herbicide agent exposure.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

CAD, DMII, and Parkinson’s disease are diseases deemed associated with herbicide exposure under current VA law. Thus, a presumption of service connection arises for a Vietnam veteran (presumed exposed to herbicide agents) who develops these conditions. A veteran shall be service connected if exposed to an herbicide agent during active military, naval, or air service, if the requirements of 38 U.S.C. § 1116 and 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C. § 1113 and 38 C.F.R. § 3.307(d) are also satisfied. 38 U.S.C. §§ 501(a), 1116; 38 C.F.R. § 3.309(e).

This statutory presumption, however, is not for application in this case as the Veteran does not have the requisite service in Vietnam during the Vietnam era. That notwithstanding, the Veteran is not precluded from establishing service connection for his conditions with proof of actual direct causation, i.e., showing that the Veteran was directly exposed to herbicides during service. See Combee v. Brown, 34 F.3d 1039, 1041-42 (Fed. Cir. 1994); see also 38 U.S.C. § 1110; 38 C.F.R. § 3.303(d).

VA has determined that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes as evidenced in a declassified Department of Defense document titled “Project CHECO Southeast Asia Report: Base Defense in Thailand.” As such, VA extends a special consideration of exposure to herbicides on a facts-found or direct basis to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. This special consideration provides that herbicide exposure may be conceded on a direct or facts-found basis, which allows such Veterans to establish actual exposure to herbicides in service.

Such special consideration applies if the Veteran served with the United States Air Force in Thailand during the Vietnam era at one of the Royal Thai Air Force Bases (RTAFBs) at U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat; and served as an Air Force security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by his MOS, performance evaluations, or other credible evidence.

In this case, the service personnel records establish that the Veteran served in Thailand on the Royal Thai Air Force Base at Udorn during the Vietnam Era. See November 2018 Military Personnel Records. The Veteran’s military occupational specialty during that time was a weather superintendent. Id; see also DD Form 214 (Certificate of Release or Discharge from Active Duty). 

The Veteran expressed that his military duties as a weather superintendent involved him providing accurate information to pilots about weather conditions and analyzing weather maps and charts. He stated that he had to walk along the flight line to meet with the pilots, hand them the maps, and brief them on the weather. The Veteran also stated that he would go around the mess hall, barracks, showers, gyms, and latrines on a daily basis. The Veteran contended that these places were near the perimeter. He also stated that he would go off base occasionally and would have to leave through the main gate of the base. See June 2019 Affidavit. 

The Veteran’s miliary personnel records document the Veteran’s duties as a weather superintendent and his performance reviews. The Veteran’s duties included interpreting, evaluating, and analyzing meteorological products, data, aircraft observations and conventional data. He also provided military weather advisories and warning service to DOD installations. It was also noted that he helped helicopter aircrews select safe routes for low-level flights and communicated with aviators.

The Board notes that in a September 2020 VA Memorandum, VA made a formal finding that it lacked the information needed to send to the United States Army and Joint Services Records Research Center (JSRRC) to verify the herbicide agent exposure. However, the Board finds no reason to find that the Veteran’s accounts are not credible. The record shows that the Veteran served in Thailand at Udorn during the Vietnam Era and his descriptions are consistent with the circumstances of his service and his lay statements concerning his duties in Thailand.

After a thorough review and consideration of the evidence, the Board determines that it is plausible that the Veteran’s MOS duties would place him on the perimeters of the Udorn RTAFB. Although the Veteran’s MOS as a weather technician is not one of the military occupations conceded to have been actually exposed to herbicides in Thailand, the Board finds the Veteran’s statements to be credible regarding his actual proximity to the perimeter of Udorn RTAFB. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007). Here, the Veteran has consistently reported that he was exposed to herbicides during his service in Thailand as a result of his MOS duties. His contentions regarding his proximity to the perimeter while stationed at the Air Force base are supported by the personnel records. The Veteran’s military duties appear to have involved working closely with pilots on the flight line regarding the safe routes to take based on the weather data. It is reasonable to believe that he would spend most of his time working on the flight line and perimeter of the base. There is no evidence of the record that would contradict these contentions and supporting evidence. 

Affording the Veteran the benefit of the doubt, the Board finds that the evidence at least in equipoise on a facts-found basis regarding whether the Veteran was exposed to herbicide agents in service. 

As such, all the requirements for substantiating claims of service connection for CAD, DMII, and Parkinson’s disease based on exposure to herbicide agents have been met; therefore, service connection for CAD, DMII, and Parkinson’s disease is warranted.

4. Entitlement to service connection for diabetic neuropathy of the left lower extremity as secondary to diabetes mellitus, type II.

5. Entitlement to service connection for diabetic neuropathy of the right lower extremity as secondary to diabetes mellitus, type II.

The Veteran contends that service connection is warranted for bilateral lower extremity diabetic neuropathy as secondary to his diabetes mellitus, type II (DMII). As discussed above, the Board finds that service connection for DMII is warranted. 

The AOJ favorably found that the Veteran has current diagnoses of diabetic neuropathy in his left and right lower extremities secondary to his DMII. 

Service connection may be established on a secondary basis for a disability which is proximately due to, the result of, or aggravated by a service-connected disease or injury. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § § 3.303, 3.310. In order to prevail on the theory of secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

As the AOJ favorably found that the Veteran has current diagnoses of diabetic neuropathy in his left and right lower extremities secondary to his DMII, and the Board has granted service connection for DMII in this decision, the criteria for service connection on a secondary basis for diabetic peripheral neuropathy of the left and right lower extremities have been met. Service connection for bilateral lower extremity diabetic peripheral neuropathy is warranted. 

6. Entitlement to service connection for cause of the Veteran’s death.

The Appellant contends that service connection is warranted for the Veteran’s cause of death. The Veteran’s cause of death is listed on his death certificate as Parkinson’s disease.

To establish service connection for the cause of death, the evidence must show that a disability that was incurred in or aggravated by service, or which was proximately due to or the result of a service-connected condition, was either a principal or contributory cause of death. 38 U.S.C. § 1310; 38 C.F.R. §§ 3.312 (a).

(Continued on next page)

 

The immediate cause of the Veteran’s death was Parkinson’s disease. As discussed above, the Board granted service connection for Parkinson’s disease. Therefore, the criteria for entitlement to service connection for the Veteran’s cause of death have been met, and service connection is warranted.

 

 

Stephanie M. Owen

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Middleton, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.