Citation Nr: 1132138 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 06-03 167 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

1. Entitlement to a disability rating in excess of 30 percent for impairment of the left shoulder due to the residuals of a fracture to the left humerus. 

2. Entitlement to a total disability evaluation based on individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

B. R. Mullins, Associate Counsel


INTRODUCTION

The Veteran had active service from September 1951 to September 1953. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2005 rating decision of the Department of Veterans Affairs Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico, denying the claim currently on appeal. This claim was previously remanded by the Board in December 2009 and May 2011. 

In December 2009, the Board denied the Veteran's claim of entitlement to service connection for loss of the use of the left hand, associated with a poor grip and numbness, to include as secondary to his service-connected left humerus fracture. This decision informed the Veteran that he had 120 days from the date of this decision being mailed to him to file a Notice of Appeal with the United States Court of Appeals for Veterans Claims (Court). No such appeal was filed by the Veteran or his representative, and this decision is now final. Subsequent action taken on the part of VA regarding this issue, to include the February 2011 supplemental statement of the case, was improper as this issue was no longer on appeal. As such, since this issue was denied by the Board in December 2009, no further action is warranted at this time. However, subsequent statements and evidence received from the Veteran and his representative clearly demonstrate an attempt to reopen this claim. As such, the issue of whether new and material evidence has been submitted to reopen a claim of entitlement to service connection for loss of use of the left hand, to include as secondary to a service-connected left humerus fracture, is REFERRED to the RO for appropriate action. 

The record also indicates that the Veteran may not be able to work as a result of his service-connected disabilities. In Roberson v. Principi, 251 F.3d 1378, 1384 (2001), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit Court) held that once a claimant: (1) submits evidence of medical disability, (2) makes a claim for the highest possible rating for the disability, and (3) submits evidence of unemployability due to the disability, an informal claim is raised under 38 C.F.R. § 3.155(a) for a total disability rating based on individual unemployability (TDIU). And as the U. S. Court of Appeals for Veterans Claims (Court/CAVC) more recently explained in Rice v. Shinseki, 22 Vet. App. 447 (2009), if the Board determines the derivative TDIU claim requires further development before being adjudicated, the appropriate disposition is to remand the TDIU claim. Absent representation by a private attorney, remands to the RO are via the Appeals Management Center (AMC) in Washington, DC. VA's Office of General Counsel also has indicated that remanding the derivative TDIU claim does not preclude the Board from going ahead and deciding the claim for a higher rating for the disability that formed the basis of the TDIU claim. See VAOPGCPREC 6-96 (Aug. 16, 1996) and VAOGCPREC 12-2001 (July 6, 2001).

The issue of entitlement to TDIU benefits is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. The appellant will be notified if further action on his part is required.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran is receiving the maximum disability evaluation available for limitation of motion of the minor shoulder and he does not suffer from ankylosis or fibrous union of the humerus. 

2. The Veteran's left elbow is limited to 90 degrees of flexion as a result of his service-connected residuals of a humerus fracture; there is no limitation of extension of the left elbow. 




 (CONTINUED ON NEXT PAGE)
CONCLUSIONS OF LAW

1. The criteria for a disability evaluation in excess of 30 percent for impairment of the left shoulder due to the residuals of a fractured humerus have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.1-4.14, 4.45, 4.71a, Diagnostic Codes 5200-02 (2010). 

2. The criteria for a separate disability evaluation of 20 percent for limitation of motion of the left elbow due to the residuals of a fractured humerus have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.1-4.14, 4.45, 4.71a, Diagnostic Code 5206 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify

VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010). 

Proper notice from VA must inform the Veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the Veteran is expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Previously, the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that the failure to provide pre-adjudicative notice of any of the necessary duty to notify elements was presumed to create prejudicial error. Sanders v. Nicholson, 487 F.3d 881 (2007). VA was required to show that that the error did not affect the essential fairness of the adjudication, and that to make such a showing the VA had to demonstrate that the defect was cured by actual knowledge on the claimant's part or that a benefit could not have been awarded as a matter of law. Id. However, the United States Supreme Court (Supreme Court) recently held this framework to be inconsistent with the statutory requirement that the CAVC take "due account of the rule of prejudicial error" under 38 U.S.C.A. § 7261(b)(2). Shinseki v. Sanders, 129 S. Ct. 1696 (2009). In reversing the Federal Circuit's decision, the Supreme Court held that the burden is on the claimant to show that prejudice resulted from the error, rather than on VA to rebut a presumed prejudice. Id.

For an increased disability rating claim, VA is required to provide the Veteran with generic notice - that is, the type of evidence needed to substantiate the claim. This includes evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). This information was provided to the Veteran in letters dated April 2005 and November 2007, as well as in an undated letter mailed after the Board's December 2009 remand. 

Under these circumstances, the Board finds that the notification requirements have been satisfied as to both timing and content. Adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board that complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b). 

Duty to Assist

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service medical records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 
 
The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). VA obtained the Veteran's service treatment records. Also, the Veteran received VA medical examinations in May 2005 and April 2010, and VA has obtained these records as well as the records of the Veteran's outpatient treatment with VA. Copies of private treatment records submitted by the Veteran have also been incorporated into the claims file. Significantly, neither the Veteran nor his representative has identified any additional existing evidence that is necessary for fair adjudication of the claim that has not yet been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Additionally, the Board finds there has been substantial compliance with its December 2009 remand directives. The Board notes that the Court has held that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall v. West, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand). The record indicates that the Appeals Management Center (AMC) scheduled the Veteran for a medical examination and that he attended this examination. The AMC later issued a Supplemental Statement of the Case (SSOC). Based on the foregoing, the Board finds that the AMC substantially complied with the mandates of its remand. See Stegall, supra, (finding that a remand by the Board confers on the appellant the right to compliance with its remand orders). 

Relevant Laws and Regulations

Disability ratings are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two ratings will be applied, the higher rating will be assigned if the disability picture more closely approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7 (2010). 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). See also 38 C.F.R. §§ 4.1, 4.2 (2010). As such, the Board has considered all of the evidence of record. However, the most probative evidence of the degree of impairment consists of records generated in proximity to and since the claim on appeal. 

As is the case here, where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Facts and Analysis

The Veteran contends that he is entitled to a disability rating in excess of 30 percent for the residuals of a fracture to the left humerus. For historical purposes, the Veteran was granted service connection for this condition in a June 1969 rating decision. A disability evaluation of 10 percent was assigned, effective as of September 20, 1953. Subsequently in a September 1998 rating decision, the Veteran's disability evaluation was increased to 30 percent, effective as of January 29, 1998. The Veteran most recently filed a claim for an increased disability evaluation in March 2005, which was denied by the RO in a July 2005 rating decision. The Veteran appealed this decision to the Board in January 2006. 

Upon filing his increased disability evaluation claim, the Veteran was afforded a VA examination of the left shoulder in May 2005. The Veteran described pain in the left arm at the fracture site. The examination report indicates that the Veteran's right upper extremity was his dominant extremity. It was noted that the Veteran was retired and that he was independent in his activities of daily living, aside from needing assistance when dressing his upper body due to decreased range of motion. Examination revealed no objective evidence of deformity or angulation, no false motion, no shortening, and no intraarticular involvement. There was, however, a notable stable scar at the lateral left arm. There was also no malunion, nonunion or any loose motion of a joint. Ankylosis did not exist. The Veteran did report severe tenderness over the fracture site. Range of motion testing of the left elbow revealed a range of motion from 0 degrees to 90 degrees with severe guarding due to pain at the end of the range of motion. This pain prevented the Veteran from moving between 90 and 145 degrees of flexion. It was also noted that the Veteran's left shoulder was limited in motion throughout. The examiner diagnosed the Veteran with residuals of a fracture to the left humerus. 

The record also demonstrates that the Veteran underwent physical therapy in January 2006. During his therapy, the Veteran reported pain in his left arm all of the time. Range of motion testing revealed flexion to 70 degrees, abduction to 80 degrees, extension to 35 degrees, internal rotation to 50 degrees and external rotation to 70 degrees. The Veteran also underwent occupational therapy around this time with VA. According to a January 2006 record, the Veteran had constant pain in the left upper extremity. A March 2006 record noted that the Veteran had limited range of motion in the left upper extremity that could not be assessed due to weakness and pain. 

The Veteran was afforded an additional VA examination of the left upper extremity in April 2010. The Veteran described increased pain intensity and decreased motion since his last VA examination of 2005. The examiner concluded that there was no history of motion at the fracture site or deformity. The Veteran did report weekly flare-ups lasting for hours. During these flare-ups, the Veteran reported having difficulty moving his left arm. Examination revealed no bone abnormality but there was decreased range of motion due to pain. Range of motion testing of the left shoulder revealed flexion to 80 degrees (with pain beginning at 50 degrees), abduction to 80 degrees (with pain beginning at 50 degrees), external rotation to 70 degrees with pain at the extreme of motion, external rotation to 70 degrees with pain at the extreme of motion, and internal rotation to 70 degrees with pain at the extreme of motion. Range of motion testing of the left elbow revealed flexion to 100 degrees (with pain beginning at 90 degrees), extension to 0 degrees to 100 degrees with no additional limitation of motion upon repetition, pronation to 80 degrees and supination to 85 degrees. 

Finally, the Veteran has submitted a number of private treatment records in support of his claim. According to a November 2010 X-ray, the Veteran had mild degenerative changes around the glenohumeral and acromioclavicular joint spaces with calcific tendinitis in supraspinatus. An internally fixed humeral shaft fracture had consolidated with residual deformity, three screws and orthopedic wire in place. The Veteran was diagnosed with osteoarthritis with chondrocalcinosis and old humeral shaft fracture with calcific tendinitis. A January 2011 X-ray also noted an old fracture of the distal humerus. X-rays revealed distal bony deformities secondary to an old fracture. No acute fractures were seen and the soft tissues were normal. The examiner noted that the Veteran was not employed and that this disability resulted in severe disability. Specifically, the Veteran was noted to have severe difficulty in activities of daily living like bathing, dressing, grooming, and toileting. 

The preponderance of the above evidence demonstrates that the Veteran is not entitled to a disability evaluation in excess of 30 percent for limitation of motion of the shoulder as a result of his left humerus fracture. This disability is currently rated under Diagnostic Code 5201. Under this code, a 30 percent disability evaluation is the maximum disability evaluation available for the minor upper extremity. Limitation of motion of the arm to 25 degrees from the side is rated as 40 percent for the major shoulder and 30 percent for the minor shoulder. 38 C.F.R. § 4.71a. Therefore, as the evidence demonstrates that the Veteran's left arm is his minor upper extremity, a higher disability evaluation is not permitted under this code. 

The Board has also considered whether any other diagnostic codes applicable to the shoulder may permit a higher disability evaluation. A higher disability evaluation is available under Diagnostic Code 5200 when there is evidence of ankylosis of the shoulder. Id. However, the record demonstrates that the Veteran does not suffer from ankylosis of the shoulder. Also, a higher disability rating of 40 percent is available under Diagnostic Code 5202 when there is evidence of a fibrous union of the humerus. However, while there is certainly evidence of deformity of the humerus, there is no evidence of impaired union. As such, none of the applicable rating criteria permit a higher disability evaluation for impairment of the left shoulder. 

The Board recognizes that the Veteran believes he is entitled to a disability evaluation in excess of 30 percent for his service-connected left shoulder disability. However, the Veteran has not provided any evidence to demonstrate that he suffers from either ankylosis of the left shoulder or fibrous union of the humerus. Without this evidence, the rating schedule does not provide for a higher disability evaluation for the minor upper extremity. Likewise, the Veteran has not submitted any statement or evidence to demonstrate that he is entitled to a higher disability evaluation for impairment of the left elbow. As such, statements provided by the Veteran do not demonstrate entitlement to a higher disability evaluation. 

However, the evidence of record does demonstrate that the Veteran is entitled to a separate disability evaluation for limitation of motion of the elbow. According to the May 2005 VA examination, the Veteran had limitation of flexion of the left elbow to 90 degrees. Extension was normal to 0 degrees. Also, according to the April 2010 VA examination, the Veteran had limitation of motion of the left elbow as a result of his service-connected humerus fracture. Separate disability ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not "duplicative of or overlapping with the symptomatology" of the other condition. Esteban v. Brown, 6 Vet. App. 259, 262 (1994). 

Diagnostic Code 5206 provides that flexion of the forearm limited to 110 degrees is rated as noncompensably (0 percent) disabling for the major side and noncompensably (0 percent) disabling for the minor side; flexion of the forearm limited to 100 degrees is rated 10 percent disabling for the major side and 10 percent for the minor side; flexion of the forearm limited to 90 degrees is rated 20 percent for the major side and 20 percent for the minor side; flexion of the forearm limited to 70 degrees is rated 30 percent disabling for the major side and 20 percent for the minor side; flexion of the forearm limited to 55 degrees is rated 40 percent disabling for the major side and 30 percent for the minor side; and flexion of the forearm limited to 45 degrees is rated 50 percent disabling for the major side and 40 percent for the minor side. 38 C.F.R. § 4.71a.

According to the VA examinations of record, the Veteran has limitation of flexion of the left elbow to 90 degrees. Both examiners opined that this limitation was a result of the Veteran's service-connected humerus fracture. As such, a separate disability evaluation of 20 percent for limitation of flexion of the left elbow is warranted. 

In DeLuca v. Brown, 8 Vet. App. 202 (1995), the Court discussed the applicability of 38 C.F.R. §§ 4.40 and 4.45 to examinations of joint motion. 38 C.F.R. § 4.40 listed several factors to consider in evaluating joints including inability to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss due to pain was a consideration, as well as weakness, which was an important consideration in limitation of motion. 38 C.F.R. § 4.40 (2010). As regards the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal; (b) more movement than normal; (c) weakened movement; (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; (f) pain on movement, swelling, deformity or atrophy of disuse; instability of station, disturbance of locomotion, interference with sitting, standing and weight bearing are related considerations. 38 C.F.R. § 4.45 (2010). 

According to the May 2005 VA examination, the Veteran's left elbow could not flex from 90 degrees to 145 degrees due to pain. Upon examination in April 2010, the Veteran was noted to be able to flex his left elbow to 100 degrees. However, the Veteran was only able to flex the left elbow to 90 degrees before experiencing pain. As such, when applying the DeLuca criteria to the Veteran's claim, it is clear that his overall functionality warrants a 20 percent disability rating. 

A preponderance of the evidence demonstrates that a disability evaluation in excess of 20 percent is not warranted, however. For the next higher disability evaluation of 30 percent, flexion must be limited to 55 degrees or less in the minor elbow. Id. There is no evidence of record to suggest that the Veteran has experienced such significant limitation of motion, even when factoring in flare-ups or the DeLuca criteria. As such, a disability evaluation in excess of 20 percent is not warranted for limitation of motion of the left elbow. 

The rating schedule represents as far as practicable, the average impairment of earning capacity. Ratings will generally be based on average impairment. 38 C.F.R. § 3.321(a), (b) (2009). To afford justice in exceptional situations, an extraschedular rating can be provided. 38 C.F.R. § 3.321(b). The Court has clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). First, the RO or the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

The Veteran's symptoms associated with his service-connected residuals of a left humerus fracture include pain, limitation of motion and impaired functionality of the shoulder and elbow. However, such impairment is contemplated by the rating criteria. See 38 C.F.R. § 4.71a, Diagnostic Codes 5201, 5206. The rating criteria also provide for a greater disability evaluation with increased impairment. As such, the rating criteria reasonably describe the Veteran's disability. Also, the evidence does not suggest that the Veteran's left humerus disability alone has resulted in marked interference with employment above and beyond that considered by the assigned disability evaluations or that there have been frequent periods of hospitalization. The Board recognizes that the Veteran suffers severe impairment as a result of his disability. However, significant disability is envisioned by a 30 percent disability evaluation for the shoulder (the maximum permitted based on limitation of motion of a minor extremity) and the newly assigned 20 percent disability evaluation for limitation of motion of the left elbow. Therefore, referral for consideration of an extraschedular rating is not warranted. Nonetheless, as will be explained in the REMAND portion below, further consideration of the Veteran's overall employability will be undertaken in this case. 

In reaching the above conclusions, the Board has been cognizant of the Court's holding in Hart v. Mansfield, 21 Vet. App. 505 (2007). However, as already discussed in detail, the evidence of record demonstrates that the Veteran's left shoulder disability has been no more than 30 percent disabling at any time during the pendency of this claim and his left elbow disability has been no more than 20 percent disabling since April 2010. As such, staged ratings are not warranted. 

As a final matter, the Board notes that the Veteran's representative requested that this claim again be remanded. Specifically, the representative argued that the Board's May 2011 remand instructed the Appeals Management Center (AMC) to review the Veteran's claims file, "including" the additional evidence and argument submitted by the Veteran in support of his claim. The Veteran's representative noted that a review of the May 2011 supplemental statement of the case reflects that the Veteran's new records were reviewed. However, it did not reflect a review of the Veteran's entire claims file in conjunction with this review. As such, the Veteran's representative felt that this claim should be remanded for violation of Stegall. 

Having considered the above argument, the Board finds that a remand would be unnecessary in this case. The Board is satisfied that all of the evidence of record was considered by the Agency of Original Jurisdiction in this case. Previous decisions by the RO and the AMC reflect that all of the evidence of record has in fact been considered. To remand this claim again for consideration of the same evidence would only result in an undue delay in the final outcome of the Veteran's claim. 

Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable. The Veteran's claim of entitlement to a disability evaluation in excess of 30 percent for a fracture of the left humerus must be denied.


ORDER

A disability rating in excess of 30 percent for the residuals of a fracture to the left humerus is denied. 

A separate disability evaluation of 20 percent for limitation of motion of the left elbow, as due to the residuals of the Veteran's service-connected fracture to the left humerus, is granted. 


REMAND

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for total disability based on individual unemployability (TDIU) is part of an increased rating claim when such claim is raised by the record. According to the April 2010 VA examiner, the Veteran retired from his previous place of employment because of his service-connected left humerus fracture. Therefore, since the record raises a claim of unemployability, the Board will remand this matter to the RO for further evidentiary development. 

Entitlement requires the presence of impairment so severe that it is impossible for the average person to follow a substantially gainful occupation. See 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2010). In reaching such a determination, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." See Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19 (2010). 

Where the schedular rating is less than total, a total disability rating for compensation purposes may be assigned when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). Presently, the Veteran is service-connected for the residuals of a left humerus fracture (rated as 30 percent disabling), a scar of the face (rated as 10 percent disabling), a scar of the right anterior iliac crest (rated as 0 percent disabling), and now, limitation of motion of the elbow as secondary to a left humerus fracture (rated as 20 percent disabling), for a combined disability evaluation of 50 percent. As such, the Veteran does not meet the percentage requirements laid out in 38 C.F.R. § 3.340. 

Even if, as here, a Veteran does not meet the required percentage standards set forth in 38 C.F.R. § 4.16(a), he still may receive a TDIU on an extra-schedular basis if it is determined he is unable to secure or follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b). See also Fanning v. Brown, 4 Vet. App. 225 (1993). But as already alluded to, ordinarily, VA's Rating Schedule will apply unless there are exceptional or unusual factors that would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). Thus, there must be a determination as to whether there are circumstances in this case, apart from any non-service connected conditions and advancing age, which would justify a total rating based on unemployability. See Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993).

While the regulations do not provide a definition of "substantially gainful employment," VA Adjudication Procedure Manual, M21-1, Part VI, paragraph 7.09(a)(7), defines the term as "that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." Also, in Faust v. West, 13 Vet. App. 342 (2000), the Court defined "substantially gainful employment" as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income...."

In Moore v. Derwinski, 1 Vet. App. 356, 359 (1991), the Court also discussed the meaning of "substantially gainful employment." And the Court noted the following standard announced by the United States Federal Court of Appeals in Timmerman v. Weinberger, 510 F.2d 439, 442 (8th Cir. 1975):

It is clear that the claimant need not be a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity. The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful employment is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant.

Marginal employment, for example, as a self-employed worker or at odd jobs or while employed at less than half of the usual remuneration, shall not be considered "substantially gainful employment." 38 C.F.R. § 4.16(a). See also Moore (Robert) v. Derwinski, 1 Vet. App. 356, 358 (1991). That is, a Veteran may be considered as unemployable upon termination of employment that was provided on account of disability or in which special consideration or accommodation was given on account of the same. See 38 C.F.R. § 4.18.

As the Court stated in Friscia v. Brown, 7 Vet. App. 294, 297 (1994), the Board may not reject a claim for a TDIU without producing evidence, as distinguished from mere conjecture, that the Veteran can perform work that would produce sufficient income to be other than marginal. See, too, Ferraro v. Derwinski, 1 Vet. App. 362, 331-32 (1991).

That said, to receive a TDIU, especially on an extra-schedular basis, the Veteran's service-connected disabilities, alone, must be sufficiently severe to cause unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Moreover, the degree of impairment in occupational functioning that is generally deemed indicative of unemployability consists of a showing that he is indeed "[in]capable of performing the physical and mental acts required by employment," and is not based solely on whether he is unemployed or has difficulty obtaining employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). Rather, the record must demonstrate some factor that takes his situation outside the norm since the VA rating schedule already is designed to take into consideration impairment that renders it difficult to obtain and keep employment. Id. See, too, 38 C.F.R. §§ 4.1, 4.15.

Regardless, the RO (or AMC), not the Board, needs to make this initial determination of whether an extra-schedular TDIU is warranted.

Accordingly, this derivative TDIU claim is REMANDED for the following additional development and consideration:

1. Determine whether to refer this derivative TDIU claim to the Under Secretary for Benefits or the Director of Compensation and Pension Service for consideration of a TDIU on a special extra-schedular basis under the alternative provisions of 38 C.F.R. § 4.16(b) (rather than under § 4.16(a), since the Veteran does not have sufficient ratings for his service-connected disabilities).

2. If a TDIU is not granted, send the Veteran an SSOC and give him and his representative time to submit additional evidence and/or argument in response before returning the file to the Board for further appellate consideration of this derivative claim.

The Veteran has the right to submit additional evidence and argument concerning the claim the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



____________________________________________
J. A. MARKEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs