Citation Nr: 1212955 
Decision Date: 04/10/12 Archive Date: 04/19/12

DOCKET NO. 09-38 780 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana



THE ISSUES

1. Entitlement to service connection for diabetes mellitus.

2. Entitlement to service connection for hypertension.



REPRESENTATION

Appellant represented by: Edward M. Farmer, Attorney



ATTORNEY FOR THE BOARD

D. M. Casula, Counsel 


INTRODUCTION

The Veteran had active service from January 1986 to August 1993.

This matter comes before the Board of Veterans' Appeals (Board) from a September 2007 rating decision of the above Regional Office (RO) of the Department of Veterans Affairs (VA) which denied service connection for diabetes mellitus and for hypertension. 

In a substantive appeal (VA Form 9), submitted in October 2009, the Veteran indicated he wanted a hearing at the RO before a Veterans Law Judge, and later specified he wanted a videoconference hearing at the RO, before a Veterans Law Judge. The record reflects that a hearing was scheduled in November 2011, but then was rescheduled for December 2011. Prior to that hearing, however, the Veteran advised that he no longer wished to have a hearing before the Board. 


FINDINGS OF FACT

1. The competent and probative medical evidence of record preponderates against a finding that the Veteran's diabetes mellitus may be related to his active military service; in addition, diabetes mellitus was not manifested within one year after his active military service.

2. Resolving all reasonable doubt in favor of the Veteran, the aggregate evidence of record is in relative equipoise as to whether his hypertension was incurred in or is causally related to his active military service. 


CONCLUSIONS OF LAW

1. Diabetes mellitus was not incurred in or aggravated by service, nor may it be presumed to have been incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2011). 

2. Giving the benefit of the doubt to the Veteran, hypertension was incurred in active service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303 (2011). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the Veteran's claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000).

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating a claim for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.159, 3.326(a).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1), as amended, 73 Fed. Reg. 23,353 (April 30, 2008). This notice must be provided prior to an initial decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of disability; (3) connection between service and the disability; (4) degree of disability; and (5) effective date of benefits where a claim is granted. Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006).

If complete notice is not provided until after the initial adjudication, such a timing error can be cured by subsequent legally adequate VCAA notice, followed by readjudication of the claim, as in a Statement of the Case (SOC) or Supplemental SOC (SSOC). Moreover, where there is an uncured timing defect in the notice, subsequent action by the RO which provides the claimant a meaningful opportunity to participate in the processing of the claim can prevent any such defect from being prejudicial. Mayfield v. Nicholson, 499 F.3d 1317, 1323-24 (Fed. Cir. 2007); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that any error in VCAA notice should be presumed prejudicial, and that VA bears the burden of proving that such error did not cause harm. Sanders v. Nicholson, 487 F.3d 881 (Fed. Cir. 2007). The U.S. Supreme Court (Sup. Ct.) reversed that decision, finding it unlawful in light of 38 U.S.C.A. § 7261(b)(2). The Supreme Court held that - except for cases in which VA failed to meet the first requirement of 38 C.F.R. § 3.159(b) by not informing the claimant of the information and evidence necessary to substantiate the claim - the burden of proving harmful error rests with the party raising the issue, the Federal Circuit's presumption of prejudicial error imposed an unreasonable evidentiary burden upon VA and encouraged abuse of the judicial process, and determinations on the issue of harmless error should be made on a case-by-case basis. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). 

The Board initially notes that given the fully favorable decision regarding service connection for hypertension, contained herein, a discussion of the VCAA notice and assistance provided to the Veteran is unnecessary, since any deficiency of such would constitute harmless error. 

With regard to the claim for service connection for diabetes mellitus, however, the Board notes that the VCAA duty to notify was satisfied by way of a letter sent to the Veteran in April 2007 that fully addressed the notice elements and was sent prior to the initial RO decision in this matter. This letter informed the Veteran of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. The Board also notes that in the April 2007 letter, the Veteran was advised of how disability ratings and effective dates are assigned. See Dingess v. Nicholson, supra. Moreover, he has not demonstrated any error in VCAA notice, and therefore the presumption of prejudicial error as to such notice does not arise in this case. See Sanders v. Nicholson, supra. Thus, the Board concludes that all required notice has been given to the Veteran. 

The Board also finds VA has satisfied its duty to assist the Veteran in the development of the claim for service connection for diabetes mellitus. The RO has obtained all identified and available service and post-service treatment records for the Veteran. While the Veteran reported he has received treatment for his diabetes since 1998 from a private physician, he did not complete a VA Form 21-4142 (Authorization and Consent to Release Information), even though he had been provided one by the RO in April 2007, and was asked to complete it if he wanted the RO to obtain any medical records for him. In August 2007, the Veteran underwent a VA examination to determine whether his diabetes mellitus was related to service. The Board finds that this VA examination was adequate; included a thorough review of the claims folder, including STRs, and a history obtained from the Veteran; and included examination findings, along with a diagnosis and opinion, which were supported in the record. See Barr v. Nicholson, 21 Vet. App. 303, 310-11 (2007). It appears that all obtainable evidence identified by the Veteran relative to his claim has been obtained and associated with the claims folder, and that neither he nor his representative has identified any other pertinent evidence, not already of record, which would need to be obtained for a fair disposition of this appeal. The Board concludes that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, supra.

The Board concludes that VA has satisfied its duty to assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claims under the VCAA. No useful purpose would be served in remanding this matter for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The United States Court of Appeals for Veterans Claims (Court) has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

II. Laws and Regulations

Service connection may be granted for disability which is the result of disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d).

In order to prevail on the issue of service connection, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between the claimed in-service injury or disease and the current disability. Hickson v. West, 12 Vet. App. 247, 252 (1999). 

Where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and diabetes mellitus becomes manifested to a degree of 10 percent or more within one year from date of termination of such service, such disease process shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2011).

Medical evidence is generally required to establish a medical diagnosis or to address questions of medical causation; lay assertions of medical status do not constitute competent medical evidence for these purposes. Espiritu v. Derwinski, 2 Vet. App. 492, 494 (1992). However, lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). Competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997). 

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

It is the Board's responsibility to evaluate the entire record on appeal. 38 U.S.C.A. § 7104(a). When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. 

III. Service Connection for Diabetes Mellitus 

The Veteran essentially contends that his current diabetes mellitus had an onset during his active military service. He contends that in service he had severe itching of his feet and dizziness spells, which were the reason he underwent glucose tolerance tests, and also claims that he was told during service that he was borderline diabetic. 

Service treatment records (STRs) show that the Veteran had high glucose levels on blood work taken in March and April 1991. In April 1992, he was seen in the family practice clinic, requesting serum glucose testing. He reported he had had his blood sugar tested and the results were 117, but he admitted to eating prior to the test. He reported that no family member had diabetes mellitus. He also reported he had slight elevated fasting blood sugar in Texas and had normal GTT (glucose tolerance test). The assessment that he was a 27 year old male with elevated blood sugar level to 117, after eating. STRs do not, however, show that the Veteran complained of or was treated for or diagnosed with diabetes mellitus during service. 

What is missing from the record is competent evidence showing that the Veteran's current diabetes mellitus may be causally related to his active military service. 38 C.F.R. § 3.303. VA treatment records, dated from 2007 through 2011, show that the Veteran received treatment for his diabetes mellitus. On a VA examination in August 2007, the Veteran reported he was being followed by his primary care physician at the Indianapolis VAMC for diabetes. The examiner noted that while the Veteran was in service, a glucose tolerance test was done in March 1988, which was normal. It was also noted that during service his blood glucose was checked a number of times, however, all of these were non-fasting, and were taken after he had breakfast. The examiner concluded that these blood glucose results and the glucose tolerance test results showed no evidence of diabetes. The examiner also noted that the Veteran was diagnosed with diabetes mellitus in 1998 by his private physician, and was started on a diabetic diet and metaform at that time. The diagnoses included diabetes mellitus, type II. The examiner opined that the Veteran's fasting blood glucose test and glucose tolerance test done during service were normal, and that other random blood sugars during service, which were non-fasting, were not significantly elevated and showed no evidence of diabetes mellitus during service. The examiner noted that the diagnosis of diabetes mellitus was made in 1998, five years after service, and concluded that the Veteran's diabetes mellitus was not a chronic residual of any abnormal findings in service. The Board finds that the VA examiner's opinion in 2007 was probative and persuasive on the issue of whether diabetes mellitus is related to service, and also notes that the Veteran has not submitted any competent medical evidence to the contrary. 

The Board recognizes the Veteran has contended that his diabetes mellitus is related to service, and also contends that he was told during service that he was borderline diabetic. As noted above, lay statements may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. Likewise, the Veteran is competent to describe symptoms he has experienced - because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. at 465 (1994). However, the Board does not believe that the etiology of diabetes mellitus is subject to lay diagnosis, and, as a lay person, the Veteran is not competent to report that his diabetes mellitus had an onset in service. 38 U.S.C.A. § 1153(a); 38 C.F.R. §§ 3.303(a), 3.159(a); Jandreau v. Nicholson, supra; Buchanan v. Nicholson, supra; Espiritu v. Derwinski, supra. That is to say, the Board finds no basis for concluding that a lay person would be capable of discerning whether current diabetes mellitus and symptoms had an onset in service, in the absence of specialized training, and the Veteran has not established any specialized training for such qualifications. 

The preponderance of the evidence is therefore against the claim of service connection for diabetes mellitus. Consequently, the benefit-of-the-doubt rule does not apply and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, supra.

IV. Service Connection for Hypertension

A review of his STRs shows that from September 1986 through July 1993, the Veteran's blood pressure readings varied widely - with systolic pressures ranging from 158 to 100 and diastolic pressures ranging from 100 to 60. In February 1988, he was seen in the primary care clinic for having elevated blood pressure during surgery in the dental clinic the day prior. His blood pressure reading was 134/96, and he reported a strong family history of high blood pressure. The assessment was elevated blood pressure, and the Veteran was to be seen the next Friday to consider blood pressure medication. STRs do not, however, show that he was ever diagnosed with or specifically treated for hypertension. 

On VA examination in August 2007, the examiner noted that a review of the Veteran's blood pressure readings in service from 1986 to 1991 showed that his systolic blood pressure varied from 130 to 140 mmHg, which was within normal limits; and that his diastolic blood pressure varied from 84 to 96 mmHg and was, on one occasion, 100 mmHg. The examiner opined that the Veteran's diastolic blood pressure may be considered occasionally borderline during service. The examiner also noted that the Veteran was not treated for hypertension while in service, and was first diagnosed with hypertension in 1998 by a private physician and started on medication for treatment of his hypertension. The diagnoses included hypertension, and the examiner opined that a review of the Veteran's service treatment records did not show any convincing evidence of hypertension in service, noting that his systolic pressure was always normal, his diastolic blood pressured remained within the range of 82 to 96 mmHg, and was 100 mmHg on one occasion only; that he was not treated with any antihypertensive medication during service; and that a diagnosis of hypertension was made in 1998, five years after his discharge from service. The examiner opined it was less likely than not that the Veteran's hypertension was a chronic residual of abnormal findings in service. 

In a letter dated in January 2010, a VA physician reviewed the Veteran's documentation, and noted that on his initial intake into service (1/13/86), his blood pressure was 108/88, which, by today's standards, is pre-hypertensive due to the diastolic blood pressure. It was also noted that there was documentation in service showing that the Veteran was in the hospital for documentation for evaluation of loss of consciousness and elevated blood pressure; that he was in the dentist office in March 1990 with a documented elevated blood pressure; and that in August 1993 a summary of defects for the Veteran listed elevated blood pressure and 38 lbs. overweight. The VA physician believed that this qualified the Veteran for hypertension that developed during his military service. 

In support of his claim, the Veteran submitted a letter, dated in December 2011, from a private registered nurse, Arrica Canty, RN, BSN, LNC, who reviewed the claims folder, provided detailed definitions regarding blood pressure and hypertension, cited to recommendations provided by the Joint National Committee on Prevention, Detection, Evaluation, and Treatment of High Blood Pressure (JNC), and provided a detailed analysis of the evidence in the claims folder. Nurse Canty opined, based on the Veteran's medical history in service, the current JNC 7 recommendations, and the JNC 3 and 4 recommendations that were used during his military service, that his current diagnosis of hypertension more likely than not began while he was on active duty. Nurse Canty also opined that the Veteran's current diagnosis of hypertension was more likely than not related to his in-service elevated blood pressure readings, which met the criteria for a diagnosis of hypertension.

The Board notes that there are competent medical opinions both for and against the Veteran's claim that his hypertension is related to service. Moreover, the Board finds that the VA examiner's opinion in 2007, the VA physician's opinion in 2010, and the private nurse's opinion in 2011, included a review of the Veteran's STRs, the claims folder, and the Veteran's contentions, and that each opinion contained supporting rationale. Thus, for these reasons and because there are competent and probative medical opinions both for and against the Veteran's claim that he his hypertension is related to service, the Board finds that the competent medical evidence is in relative equipoise as to whether the Veteran's hypertension is related to service. When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Accordingly, in resolving reasonable doubt in the Veteran's favor, the Board concludes that the evidence is in relative equipoise, and therefore service connection for hypertension is warranted. 38 U.S.C.A. § 5107(b). 


ORDER

Service connection for diabetes mellitus is denied.

Service connection for hypertension is granted.



____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs