http://www.va.gov/vetapp16/Files3/1626400.txt

Citation Nr: 1626400 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 08-31 592 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico

THE ISSUES

1. Entitlement to a rating in excess of 10 percent prior to June 23, 2015 and in excess of 30 percent thereafter for post traumatic headaches.
 
2. Entitlement to a rating in excess of 30 percent for major depressive disorder, to include posttraumatic stress disorder (PTSD).

REPRESENTATION

Appellant represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

R. Dodd, Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from May 2002 to July 2007. 

These matters are before the Board of Veterans' Appeals (Board) on appeal from a February 2008 rating decision of the San Juan, Puerto Rico Department of Veterans Affairs (VA) Regional Office (RO), which granted service connection for post traumatic headaches at 10 percent (effective July 19, 2007), and granted service connection for major depressive disorder at 10 percent (effective July 19, 2007). Thereafter, a November 2009 rating decision granted an increased 30 percent rating for the Veteran's major depressive disorder (effective July 19, 2007), a December 2014 Board decision promulgated by an RO rating decision in January 2015 granted service connection for PTSD and combined it with the Veteran's evaluation for major depressive disorder, and a January 2016 rating decision granted an increased 30 percent rating for the Veteran's post traumatic headaches (effective June 23, 2015); however, as those awards did not represent a total grant of benefits sought on appeal, the claims for increase remain before the Board. AB v. Brown, 6 Vet. App. 35 (1993).

This claim was previously before the Board in December 2014, at which time it was remanded for additional development. That development having been completed, this claim is once again before the Board.

The Board notes that the issue of entitlement to service connection for a lumbar spine disability was also previously before it and remanded in December 2014. However, on remand the RO granted the Veteran service connection for this claimed disability in a January 2016 rating decision. As such, this issue is considered resolved in full and is no longer before the Board. Accordingly, no further discussion regarding this disability shall ensue.

This appeal was processed using the Virtual VA (VVA) and Virtual Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.

The issue of entitlement to a rating in excess of 30 percent for major depressive disorder, to include PTSD, is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran's post traumatic headaches have shown evidence of characteristic prostrating attacks averaging more than once per month prior to June 23, 2015.

2. The Veteran's post traumatic headaches have not been shown to present very frequent completely prostrating with prolonged attacks productive of severe economic inadaptability at any time during the period of appeals.

3. The Veteran's traumatic brain injury (TBI) symptoms do not satisfy the criteria for impairment greater than level 1 in any facet.

CONCLUSIONS OF LAW

1. The criteria for an evaluation of 30 percent for service-connected post traumatic headaches prior to June 23, 2015 are met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.124a, Diagnostic Codes (DCs) 8045 and 8100 (2015).
 
2. The criteria for an evaluation in excess of 30 percent for service-connected post traumatic headaches throughout the appeal period have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.124a, Diagnostic Codes (DCs) 8045 and 8100 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

Under the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002). This notice must be provided prior to an initial RO decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328, 1333 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). VCAA notice requirements apply to all five elements of a service connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). 

Defective timing or content of VCAA notice is not prejudicial to a claimant if the error does not affect the essential fairness of the adjudication, such as where (1) the claimant demonstrates actual knowledge of the content of the required notice; (2) a reasonable person could be expected to understand from the notice what was needed; or (3) a benefit could not have been awarded as a matter of law. Sanders v. Nicholson, 487 F.3d 881, 889 (Fed. Cir. 2007), rev'd on other grounds, Shinseki v. Sanders/Simmons, 556 U.S. 369 (2009). Defective timing may be cured by a fully compliant notice letter followed by a readjudication of the claim. Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

But "[i]n cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated-it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled." Dingess/Hartman, 19 Vet. App. at 490; Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007) (noting that once an initial VA decision awarding service connection and assigning a disability evaluation and effective date has been made, section 5103(a) notice is no longer required). Additionally, where service connection has been granted, the claimant bears the burden of demonstrating prejudice from defective notice with respect to downstream elements such as effective dates or disability ratings. Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). The Veteran has made no such assertions here. Accordingly, the Board finds that VA's duty to notify has been satisfied. 

The Board also finds that VA's duty to assist the Veteran has been satisfied. 38 U.S.C.A. § 5103A (b), (c); 38 C.F.R. § 3.159(c)(1)-(3). The Veteran's service treatment records, private treatment records, and VA outpatient treatment records have been obtained and associated with the claims file. VA also provided the Veteran with a VA examination in 2011 and 2015. The Board concludes that these examinations were adequate because each contained a history obtained from the Veteran and thorough examination relevant to the applicable rating criteria. They also addressed the functional effects caused by the Veteran's disability, including its effects on his occupation. There is no indication in the record that additional evidence is available which is relevant to the currently appealed claim. See Pelegrini, 18 Vet. App. at 121-22.

In December 2014, the Board remanded the claim to afford the provision of a contemporaneous VA examination. The Board finds on review that the RO substantially complied with the requirements articulated in the Board's remand. D'Aries v. Peake, 22 Vet. App. 97 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

Legal Criteria

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Schedule), found in 38 C.F.R. Part 4 (2015). The Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). In resolving this factual issue, only the specific factors as enumerated in the applicable rating criteria may be considered. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992).

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2015). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999). 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). The Board notes, however, that where, as here, the current appeal is based on the assignment of an initial rating for a disability following an initial award of service connection, evidence contemporaneous with the claim and the initial rating decision are most probative of the degree of disability existing when the initial rating was assigned and should be the evidence 'used to decide whether an original rating on appeal was erroneous.' Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, 'staged' ratings may be assigned for separate periods of time. Fenderson, 12 Vet. App. at 126. 

The Veteran's post traumatic headaches are rated as 10 percent disabling prior to June 23, 2015 and 30 percent disabling thereafter under the diagnostic code for migraines. 38 C.F.R. § 4.124a, Diagnostic Code 8100. A 10 percent evaluation is warranted for headaches with characteristic prostrating attacks averaging one in 2 months over the last several months. Id. A 30 percent evaluation is warranted for headaches with characteristic prostrating attacks occurring on an average once a month over last several months. Id. A 50 percent evaluation is warranted for headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Id. 

Additionally, the Veteran's post traumatic headaches may be rated under the corresponding diagnostic code for TBI as well, whichever yields the higher evaluation, due to the fact that his headaches stem from an in-service head trauma. 38 C.F.R. § 124a, Diagnostic Code 8045. Emotional/behavioral problems that are determined to be residuals of traumatic brain injury are evaluated separately under 38 C.F.R. § 4.130 (Schedule of Ratings for Mental Disorders) when there is a diagnosis of a mental disorder. The Board finds that the Veteran's emotional/ behavior dysfunction resulting from TBI is already addressed as part of the ratings discussed for major depressive disorder and PTSD, and rating any such dysfunction separately would result in pyramiding. As a result, the Board will not consider cognitive impairment or emotional/behavioral dysfunction when evaluating the Veteran's TBI. 

Subjective symptoms may be the only residual of TBI or may be associated with cognitive impairment or other areas of dysfunction. Subjective symptoms that are residuals of TBI are evaluated, whether or not they are part of cognitive impairment, under the subjective symptoms facet under the same table as cognitive impairment. However, residuals with a distinct diagnosis may be evaluated under another diagnostic code, such as migraine headache or Meniere's disease, even if that diagnosis is based on subjective symptoms, rather than under the same table as cognitive impairment as well. Id.

The table titled "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified" contains 10 important facets of TBI. It provides criteria for levels of impairment for each facet, as appropriate, ranging from zero to three, and a fifth level, the highest level of impairment, labeled "total." However, not every facet has every level of severity. The Consciousness facet, for example, does not provide for an impairment level other than "total," because any level of impaired consciousness would be totally disabling. A 100 percent evaluation is assigned if "total" is the level of evaluation for one or more facets. If no facet is evaluated as "total," the overall percentage rating is assigned based on the level of the highest facet as follows: zero equals a noncompensable rating; a one equates to a 10 percent; a two equates to a 40 percent; and a three equates to a 70 percent. For example, a 70 percent rating is assigned if three is the highest level of evaluation for any facet. 38 C.F.R. § 4.124a, DC 8045.

Note (1) explains that there may be an overlap of manifestations of conditions evaluated under the table titled "Evaluation Of Cognitive Impairment And Other Residuals Of TBI Not Otherwise Classified" with manifestations of a co-morbid mental or neurologic or other physical disorder that can be separately evaluated under another diagnostic code. In such cases, only one rating is assigned based on the same manifestations. If the manifestations of two or more conditions cannot be clearly separated, a single evaluation is assigned under whichever set of diagnostic criteria allows the better assessment of overall impaired functioning due to both conditions. However, if the manifestations are clearly separable, a separate rating is assigned for each condition. Id., Note (1).

The symptoms listed as examples at certain evaluation levels in the table are only examples and are not symptoms that must be present in order to assign a particular evaluation. Id., Note (2). 

"Instrumental activities of daily living" refers to activities other than self-care that are needed for independent living, such as meal preparation, doing housework and other chores, shopping, traveling, doing laundry, being responsible for one's own medications, and using a telephone. These activities are distinguished from "activities of daily living," which refers to basic self-care and includes bathing or showering, dressing, eating, getting in or out of bed or a chair, and using the toilet. Id., Note (3). 

Finally, the terms "mild," "moderate," and "severe" TBI, which may appear in medical records, refer to a classification of TBI made at, or close to, the time of injury rather than to the current level of functioning. This classification does not affect the rating assigned under DC 8045. Id., Note (4).

When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrent symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

The claimant bears the burden of presenting and supporting his/her claim for benefits. 38 U.S.C.A. § 5107(a). See Fagan v. Shinseki, 573 F.3d 1282 (Fed. Cir. 2009). In its evaluation, the Board shall consider all information and lay and medical evidence of record. 38 U.S.C.A. § 5107(b). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board shall give the benefit of the doubt to the claimant. Id. Another way stated, VA has an equipoise standard akin to the rule in baseball that "the tie goes to the runner." Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The benefit of the doubt doctrine is not applicable based on pure speculation or remote possibility. See 38 C.F.R. § 3.102.

Background

The Veteran contends that he suffers from symptoms of his post traumatic headaches that warrant an evaluation higher than 10 percent prior to June 23, 2015 and higher than 30 percent thereafter. In this regard, the Veteran has indicated that he experiences severe prostrating headaches that regularly interfere with his ability to work.

A review of the Veteran's service treatment records show that he was injured in July 2006 when an improvised explosive device (IED) exploded next to his Humvee. The Veteran lost consciousness for several minutes. He complained of cephalea, mostly occipital and suboccipital, that lasted for several hours. He then began experiencing headaches that were precipitated by light, tension, and insomnia. No other facets of TBI were noted.

A review of the Veteran's outpatient treatment records post-service show that he continued to complain of experiencing headaches that were precipitated by light, tension, and insomnia. There was no discussion of frequency of headaches more than an average of once in 2 months over the last several months. No other facets of TBI were noted.

A VA examination was provided shortly after release from active duty in September 2007. Upon a review of the claims file, subjective interview, and objective testing, a diagnosis of post traumatic headaches was provided. Although the diagnosis was related to the in-service head trauma, no other facets of TBI were noted as symptoms. The Veteran's only residual symptoms were shown to be headaches with characteristic prostrating attacks averaging once in 2 months over the last several months. 

The Veteran was provided with an additional VA examination in November 2011. Although the diagnosis was related to the in-service head trauma, no other facets of TBI were noted as symptoms other than headaches. It was noted that the Veteran had been receiving treatment for his headaches with fair response. He reported having headaches on a weekly basis, with most attacks prostrating since onset in 2007. The examiner noted that the Veteran has evidence of weekly prostrating attacks. There was no indication given that the attacks had an effect on the Veteran's occupation or were productive of economic inadaptability. Physical examination yielded normal neurological findings. The Veteran was diagnosed with migraine, with aura, intractable, post-traumatic by history.

The Veteran was provided with an additional VA examination in June 2015. Upon a review of the claims file, subjective interview, and objective testing, the Veteran was diagnosed with a TBI, with the primary and sole symptom identified as post traumatic headaches. No other facets of TBI were noted. Although insomnia and tinnitus were noted, the Veteran is separately compensated for both conditions under his service-connected tinnitus and major depressive disorder with PTSD. The Veteran reported headaches that occur weekly and noted that they are stable. The examiner noted that, when the Veteran's headaches are prostrating, they can interfere with his ability to work. It was noted that the Veteran's headaches are only prostrating about once per month. It was also noted that these prostrating attacks do not cause severe economic inadaptability.

Analysis

Based on the above, the Board finds that the Veteran's post traumatic headaches meet the criteria for a 30 percent evaluation throughout the entire appeal period. Such evaluation is based upon the Veteran's showing of prostrating headaches occurring at least on a monthly basis ever since release from active duty in 2007, as shown via the VA examination and treatment notes of record. Although consideration was also given to whether the Veteran's TBI may afford a higher evaluation under the rating criteria for that condition, the Veteran has not alleged and the medical evidence has not shown any manifestations of such condition distinct from what is already being rated separately during the appeals period. No other facets, besides subjective facets, showed an assignment of value over 1, thus only entitling the Veteran to, at most, a 10 percent evaluation for that condition if it were rated in lieu of the headaches. Thus, the predominant disability is the post traumatic headaches and the severity of the overall disability is persuasively shown to warrant elevation to 30 percent. 

Although higher evaluations are also afforded for a showing of headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability, the evidence of record has not shown any such manifestations during the period of appeal.

As such, the Board finds that the Veteran is only entitled to a 30 percent evaluation. In so finding, the Board recognizes that the Veteran believes he is entitled to a higher rating. However, the Veteran's competent and credible lay evidence regarding his symptoms is outweighed by the competent and credible medical evidence that evaluates the true extent of impairment due to his service connected disability based on objective data coupled with the lay complaints. In this regard, the Board notes that the VA examiner and treating medical professionals have the training and expertise necessary to administer the appropriate tests for a determination of the type and degree of the impairment associated with the Veteran's complaints. For these reasons, greater evidentiary weight is placed on the examination findings in regard to the type and degree of impairment. 

The Board has considered whether staged ratings are warranted but finds that they are not as the probative evidence does not show that there are distinct periods of time where an evaluation in excess of 30 percent is warranted. The evidence of record does not warrant ratings in excess of those assigned for the Veteran's post traumatic headaches at any time during the period pertinent to this appeal. 38 U.S.C.A. § 5110 (West 2014). 

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). First, the RO must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the Veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate the Veteran's disability picture and that picture has attendant thereto related factors, such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating under 38 C.F.R. § 3.321(b)(1) (2015). 

The rating criteria adequately contemplate the Veteran's post traumatic headaches. The Veteran's post traumatic headaches are manifested by symptoms such prostrating attacks on at least a monthly basis. These manifestations are contemplated in the rating criteria. The rating criteria are therefore adequate to evaluate the Veteran's disability. As the Veteran's disability picture is contemplated by the rating schedule, the Board need not consider whether the disability picture exhibits other related factors such as marked interference with employment and frequent periods of hospitalization. In short, the rating criteria reasonably describe the Veteran's disability levels and symptomatology. Accordingly, referral for consideration of an extraschedular rating is not warranted.

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Lastly, the Court has held that a request for a total rating based upon individual unemployability (TDIU), whether expressly raised by the Veteran or reasonably raised by the record, is not a separate 'claim' for benefits, but rather, can be part of a claim for increased compensation for the underlying disability. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). If the claimant or the record reasonably raises the question of whether the Veteran is unemployable due to the disability for which an increased rating is sought, then part and parcel to that claim for an increased rating is whether a total rating based on individual unemployability as a result of that disability is warranted. Id. at 455. In this case, the evidence does not show, and the Veteran does not contend, that his post traumatic headaches render him unable to secure and maintain substantially gainful employment. Therefore, entitlement to TDIU is not raised by the Veteran or the record in connection with the issue before the Board and, as such, need not be further addressed.

In reaching this decision, the Board has resolved the benefit of the doubt in the Veteran's favor to the extent indicated.

ORDER

Entitlement to a rating of 30 percent prior to June 23, 2015 for post traumatic headaches is granted, subject to the laws that govern the payment of monetary benefits.

Entitlement to a rating in excess of 30 percent for post traumatic headaches is denied.

REMAND

Although the Board sincerely regrets the additional delay in this appeal, it is constrained by the fact that proper adjudication requires further development with respect to the appealed claims.

Remand may be required where the record before the Board contains insufficient medical information for evaluation purposes. Littke v. Derwinski, 1 Vet. App. 90, 93 (1990). 

Here, the Veteran was provided with a VA examination for his psychiatric disabilities in accordance with the December 2014 Board remand in June 2015. Although the VA examiner appears to have considered the Veteran's major depressive disorder in assessing the current severity of his disability, he did not give any consideration to his PTSD, which is also service-connected and combined with this disability. The Board notes that, although PTSD was combined with the Veteran's major depressive disorder rather recently in a January 2015 rating decision, the results of such were definitely present and promulgated at the time of the June 2015 VA examination and, thus, should have been included in any such evaluation.

The Board particularly highlights that the VA examiner found explicitly that the Veteran did not have any other diagnosed psychiatric disabilities other than major depressive disorder, despite having a confirmed diagnosis of PTSD which had been service-connected just 5 months earlier. The Board finds that this finding is inaccurate and calls into questions the findings of the examination as a whole. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (noting that a medical opinion based on an inaccurate factual premise has no probative value).

Accordingly, the Board finds that the Veteran should be schedule for another VA psychiatric examination which takes both of the Veteran's service-connected psychiatric diagnoses of major depressive disorder and PTSD into consideration in order to ascertain the severity of both conditions together.

Additionally, as this case must be remanded for the foregoing reasons, any recent treatment records, including VA records, should also be obtained. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be requested to provide the names, addresses and approximate dates of treatment of all medical care providers, VA and non-VA, who have treated him for the disabilities on appeal. After the Veteran has signed the appropriate releases, those records should be obtained and associated with the claims folder. Appropriate efforts must be made to obtain all available VA treatment records. All attempts to procure records should be documented in the file. If the AOJ cannot obtain records identified by the Veteran, a notation to that effect should be inserted in the file. The Veteran is to be notified of unsuccessful efforts in this regard, in order to allow him the opportunity to obtain and submit those records for VA review.

2. After any new evidence has been associated with the claims file, the RO should arrange for the Veteran to undergo a psychiatric examination by a qualified examiner. The entire claims file and electronic claims file must be made available to the examiner designated to examine the Veteran. All indicated tests and studies should be accomplished, and all clinical findings should be reported in detail. 

The examiner should clearly identify all current psychiatric diagnoses of record, to specifically include consideration of major depressive disorder and PTSD. In so doing, the examiner should provide a discussion of the current severity of the Veteran's psychiatric disabilities in light of the service-connected diagnoses.

The examiner is advised that the Veteran is competent to report symptoms and treatment, and that his reports must be taken into account, along with the other evidence of record, in formulating the requested opinion.

The examiner should set forth all examination findings, along with the complete rationale for any conclusions reached.

3. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

4. Review the examination reports to ensure that they are in complete compliance with the directives of this remand. If the reports are deficient in any manner, the AMC must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998).

5. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs